1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                 FOR THE EASTERN DISTRICT OF CALIFORNIA

8    LONNIE G. SCHMIDT, et al.,

9              Plaintiffs,                    CIV. NO. S-09-660 LKK GGH PS

10        vs.

11   UNITED STATES OF AMERICA, et al.,        ORDER and

12             Defendants.                    FINDINGS AND RECOMMENDATIONS
     _____/

13

14   _Introduction and Summary_

15              This action, in which plaintiffs are proceeding pro se, has been referred to the

16   undersigned pursuant to E.D. Cal. L.R. 302(c)(21).

17              The action is part of the continuing saga involving these plaintiffs in what

18   probably can be construed as spite litigation.  The initiation of the saga involved the filing of

19   lawsuits by the Securities and Exchange Commission (SEC) in federal court in Texas against

20   individuals not plaintiffs herein.  Apparently, however, some of the plaintiffs herein were in

21   possession of assets subject to seizure by a court appointed receiver.  A lengthy history of

22   conduct contemptuous of the Texas federal court by Lonnie and Daniel Schmidt ensued, resulting

23   in arrest warrants being issued, and the actual incarceration of Lonnie Schmidt for a substantial

24   period of time.  It also appears that plaintiff Daniel Schmidt was a longtime fugitive on an

25   outstanding arrest warrant issued by the Texas federal judge.  The receiver appointed in the

26   Texas actions has sought to seize assets of the plaintiffs in order to comply with his appointing

                                              1

1  authority orders.  The remaining plaintiffs allege that they were "victims" of the enforcement of

2  the federal court orders and the appointed receiver's orders.

3  Defendants in these actions are grouped into two sets: the Receiver defendants

4  (Warfield, Crawford, Murphy and Atwood) and the Federal Defendants (the United States,

5  United States District Judge Buchmeyer, United States Marshal Antonio Amador, Deputy

6  Marshals Timothy Ashton, Marta Fonda, Randy Ely, and SEC Attorney, Jeffrey Norris).  The

7  undersigned issued Findings and Recommendations with respect to the Receiver defendants on

8  March 16, 2010, in which the undersigned recommended the dismissal of the Receiver

9  defendants based on quasi-judicial immunity.  The Federal Defendants make their motion on

10  several unrelated grounds.

11  Plaintiffs have unduly complicated this action by bringing a conglomeration of

12  overlapping, and even redundant, claims in which they name some or all defendants.  The United

13  States Attorney has complicated the motion insofar as no certification of scope of employment

14  pursuant to 28 U.S.C. § 2679 has been made.  This complication will be discussed below.

15  *The Specific Motion of the United States and Federal Defendants*

16  Presently before the court are two motions to dismiss, one filed by the United

17  States and the other filed by defendants Ashton, Amador, Fonda, Ely and Norris on October 29,

18  2009.  These motions were taken under submission without a hearing on December 3, 2009, and

19  without oppositions having been filed.  On December 4, 2009, plaintiffs filed a motion to

20  continue the hearing to January 28, 2010, indicating that they now had counsel to represent them.

21  The motion was signed and filed by plaintiffs only without a notice of substitution filed by

22  counsel pursuant to E. D. Local Rule 182.

23  On December 11, 2009, plaintiffs were directed to file a notice of substitution *and*

24  oppositions to the three pending motions by December 18, 2009, if they intended to proceed with

25  counsel.  Plaintiffs filed oppositions to the motions to dismiss on December 18th, but did not file

26  any substitution of counsel, and still have not done so.  By order of March 16, 2010, plaintiffs'

1   request to continue the hearing on the instant motions was denied.

2   *Factual Background*

3            Plaintiffs are Lonnie Schmidt and his family members who allege that defendants

4   conspired against them to maliciously prosecute six of the nine plaintiffs by misusing and

5   abusing the legal process, and falsely arrested and imprisoned them.  Other allegations include

6   assault, battery and kidnaping of Lonnie Schmidt, denial of Lonnie Schmidt's trial rights,

7   including denial of counsel, denial of speedy trial, false imprisonment and interference with his

8   civil rights.  Also alleged is unlawful seizure of personal and business property belonging to

9   Lonnie and Connie Schmidt.  Plaintiffs Daniel and Rebecca Schmidt claim unlawful search and

10  seizure of real, personal and business property.  Plaintiffs Donald and Deborah Manzer claim

11  wrongful slander of title, abuse of process, malicious prosecution and extortion.  (Compl. at ¶ 2.)

12  Jordyn Manzer is alleged to be the minor child of the Manzers.[1]  Plaintiffs Donna and Edward

13  Maria allege that they were falsely arrested and imprisoned in their home.  (Id. at ¶ 98.)

14           These claims arise out of another litigation by the Securities and Exchange

15  Commission in the Northern District of Texas against non-parties James and David Edwards for

16  securities fraud.  (Def.'s Mot. at 5, dkt. #10.)  These defendants were convicted, and defendant

17  Warfield was appointed Receiver by defendant Judge Buchmeyer[2], who entered the

18  "Receivership Order" on March 25, 2002.  (Id., Ex. 2, dkt. #10.)  Actions taken pursuant to this

19  Order are denominated as being taken by the "Receivership Court."

20           Defendants Crawford, Murphy and Atwood were hired as Warfield's staff.  They

21  traced $282,405 in stolen investor funds to Lonnie Schmidt.  (Id.)  Schmidt was ordered before

22

23           [1] While a non-attorney may represent him or herself in a lawsuit, he or she has no
    authority to appear as an attorney for others.  "[A] parent or guardian may not bring an action on
24  behalf of a minor child without retaining a lawyer." Johns v. County of San Diego, 114 F.3d 874,
    877 (9th Cir. 1997).  The action is not proper insofar as plaintiffs, non-lawyers, purport to bring
25  the action on behalf of this minor.

26           [2] Defendants have filed a notice of death of this defendant. (Dkt. # 25.)

                                                    3

the Receivership Court and ordered to turn over the funds or testify as to their disposition.  He

refused, was held in contempt, and remained a fugitive for two and a half years.  Even after his

apprehension, he appealed the contempt order and refused to provide deposition testimony

regarding these assets.  Lonnie Schmidt filed numerous filings in the Receivership Court, causing

the court to direct the Receiver not to respond until ordered to do so by the court.

Lonnie's son, Daniel, also a plaintiff in this action, was found to be a signatory

with his father on the account receiving the stolen funds.  He was found in contempt and ordered

to appear, but remained a fugitive for a lengthy period.  The Receiver has now traced a total of

$727,405 to Lonnie and Daniel Schmidt and obtained final judgments for this amount.  Without

evidence that the Schmidts were no longer in possession of these funds, the Receivership Court

placed the Schmidts' assets in control of the Receiver.  The Receivership Order permitted the

Receiver to take control of Receivership assets, records, property, and to remove persons who

interfere with the Receiver from the property, and to secure property and other assets.  (Defs.'

Mot., Ex. 3, dkt. #10.)  The order also prohibited Lonnie Schmidt and his family from filing

other actions involving the Receivership matter.  Specifically, the court ruled:

> All persons, including Lonnie Schmidt, Daniel Schmidt, and their
> agents, employees, attorneys, *family members*, and all persons in
> active concert of participation with them, *who receive actual notice
> of this Order* by personal service or otherwise, *are enjoined from* in
> any way interfering with the operation of this Receivership or in
> any way disturbing the Receivership Assets and from *filing or
> prosecuting any actions or proceedings which involve the Receiver
> or which affect the Receivership Assets*, specifically including any
> proceeding initiated pursuant to the United States Bankruptcy
> Code, except with the prior permission of this Court.  Any actions
> so authorized to determine disputes relating to Receivership Assets
> shall be filed in this Court.

(Defs.' Mot., dkt. #10, Ex. 3 at ¶ 4.) (Emphasis added.)

The claims against the United States and the Federal Defendants stem from their

actions carried out to effectuate the order of Judge Buchmeyer who had found plaintiffs Lonnie

and Daniel Schmidt in contempt and ordered them to be remanded into the custody of the U.S.

1  Marshal, as well as the order to seize plaintiffs' property in connection with the receivership.

2  Federal defendants Ashton, Amador, Fonda, and Ely are United States Marshals and Deputy

3  Marshals.  Federal defendant Norris is an attorney employed by the Securities and Exchange

4  Commission ("SEC").  Claims against the United States in Count I are Federal Tort Claims Act

5  claims for malicious prosecution, malicious abuse of the legal process, abuse of process, assault,

6  battery, false arrest, false imprisonment, kidnaping, grand theft, denial of counsel, denial of

7  speedy trial, interference with civil rights, intentional infliction of emotional distress and

8  conspiracy.  Claims against the Federal Defendants and Doe defendants are as follows:

9  Count II – <u>Bivens</u> actions for violation of the First, Fourth, Fifth, Sixth, and Eighth Amendments

10  to the United States Constitution;

11  Count III – 42 U.S.C. § 1983 actions against unidentified California city and county officials for

12  violations of the amendments set forth in Count II;

13  Count IV – Conspiracy Claim under <u>Bivens</u> and § 1983;

14  Count V – State law claim for Malicious Prosecution (Receiver Defendants only – already

15  recommended to be dismissed);

16  Count VI – State law claim for Conspiracy (A mixture of Receiver defendants and Federal

17  Defendants; to the extent it applies to Receiver defendants, this claim has been recommended to

18  be dismissed);

19  Count VII – Unlawful Search and Seizure based on California Constitution and Fourth

20  Amendment – "All" defendants

21  Count VIII – "Trespass for Assault and Battery" based on California Constitution and Fourth

22  Amendment against "All" defendants;

23  Count IX – False Arrest and False Imprisonment claims based on the California Constitution,

24  Fourth Amendment, and 18 U.S.C. § 4001 (a) against "All" defendants;

25  Count X – Abuse of Process – presumably a state law claim against "All" defendants;

26  Count XI – Deprivation of Due Process based on violation of the California Constitution and

1   Fifth Amendment against "All" defendants;

2   Count XII – Denial of Counsel and Speedy Trial based on the Texas Constitution and Sixth

3   Amendment against "All" defendants;

4   Count XIII – Interference with Contractual Relations, presumably a state law claim against "All"

5   defendants;

6   Count XIV– Libel and Slander, presumably a state law claim, against "All" defendants;

7   Count XV – Nuisance Claim, presumably a state law claim, against All" defendants;

8   Count XVI – Infliction of Emotional Distress, presumably a state law claim, against "All"

9   defendants;

10  Count XVII – Intentional and Negligent Infliction of Emotional Distress, presumably a state law

11  claim, against "All" defendants;

12   Count XVIII – Conversion, presumably a state law claim, against "All" defendants;

13  Count XIX – "Value of Plaintiff's Time," presumably a state law claim if at all, against "All"

14  defendants;

15  Count XX – Racketeering pursuant to 18 U.S.C. § 1962(d), against "All" defendants;

16  Count XXI – Imposition of a Constructive Trust, presumably a state law claim, against "All"

17  defendants.

18  DISCUSSION

19      I. *Procedural Standards*

20          A.   Motion to Dismiss Pursuant to Rule 12(b)(1)

21          Federal district courts are courts of limited jurisdiction.  U.S. Const. Art. III, § 1

22  provides that the judicial power of the United States is vested in the Supreme Court, "and in such

23  inferior Courts as the Congress may from time to time ordain and establish."  Congress therefore

24  confers jurisdiction  upon federal district courts, as limited by U.S. Const. Art. III, § 2.  See

25  Ankenbrandt v. Richards, 504 U.S. 689, 697-99, 112 S. Ct. 2206, 2212 (1992).  Since federal

26  courts are courts of limited jurisdiction, a case presumably lies outside the jurisdiction of the

1   federal courts unless proven otherwise.  Kokkonen v. Guardian Life Ins. Co. of America, 511

2   U.S. 375, 376-78, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994).  Lack of subject matter

3   jurisdiction may be raised at any time by either party or by the court.  See Attorneys Trust v.

4   Videotape Computer Products, Inc., 93 F.3d 593, 594-95 (9th Cir. 1996).

5            On a Rule12(b)(1) motion to dismiss for lack of subject matter jurisdiction,

6   plaintiff bears the burden of proof that jurisdiction exists.  See, e.g., Sopcak v. Northern

7   Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir.1995); Thornhill Pub. Co. v. General Tel.

8   & Electronics Corp., 594 F.2d 730, 733 (9th Cir.1979).  Different standards apply to a 12(b)(1)

9   motion, depending on the manner in which it is made.  See, e.g., Crisp v. U.S., 966 F. Supp. 970,

10  971-72 (E.D. Cal. 1997).

11           First, if the motion attacks the complaint on its face, often referred to as a "facial

12  attack," the court considers the complaint's allegations to be true, and plaintiff enjoys

13  "safeguards akin to those applied when a Rule 12(b)(6) motion is made."  Doe v. Schachter, 804

14  F. Supp. 53, 56 (N.D. Cal. 1992).  Presuming its factual allegations to be true, the complaint

15  must demonstrate that the court has either diversity jurisdiction or federal question jurisdiction.

16  For diversity jurisdiction pursuant to 28 U.S.C. § 1332, plaintiff and defendants must be residents

17  of different states.  For federal question jurisdiction pursuant to 28 U.S.C. § 1331, the complaint

18  must either (1) arise under a federal law or the United States Constitution, (2) allege a "case or

19  controversy" within the meaning of Article III, § 2, or (3) be authorized by a jurisdiction statute.

20  Baker v. Carr, 369 U.S. 186, 198, 82 S. Ct. 691, 699-700, 7 L. Ed. 2d 663 (1962).

21           Second, if the motion makes a "factual attack" on subject matter jurisdiction,

22  often referred to as a "speaking motion," the court does not presume the factual allegations of the

23  complaint to be true.  Thornhill, 594 F.2d at 733.  In a factual attack, defendant challenges the

24  truth of the jurisdictional facts underlying the complaint.  "Faced with a factual attack on subject

25  matter jurisdiction, the trial court may proceed as it never could under Rule 12(b)(6). . . . No

26  presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material

1   facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

2   claims." Id. (quotations and citation omitted).  The court may hear evidence such as declarations

3   or testimony to resolve factual disputes. Id.; McCarthy v. United States, 850 F.2d 558, 560 (9th

4   Cir. 1988).[3]

5                                    B.  Motion to Dismiss Pursuant to 12(b)(6)

6           In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6),

7   a complaint must contain more than a "formulaic recitation of the elements of a cause of action;"

8   it must contain factual allegations sufficient to "raise a right to relief above the speculative

9   level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  "The

10  pleading must contain something more...than...a statement of facts that merely creates a suspicion

11  [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice

12  and Procedure § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual

13  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,

14  ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).

15  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

16  draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

17          In considering a motion to dismiss, the court must accept as true the allegations of

18  the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

19  Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

20  motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

21  89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume

22  that general allegations embrace those specific facts that are necessary to support the claim.'"

23

---

24      [3]  If the jurisdictional issue is intertwined with the merits of the case, the trial court cannot determine the jurisdictional issue until such facts are appropriately resolved.  See Roberts v.

25  Corrothers, 812 F.2d 1173, 1177-78 (9th Cir.1987); see also Trentacosta v. Frontier Pac. Aircraft Indus., 8l3 F.2d 1553, 1558 (9th Cir. 1987) (summary judgment standard applied if motion

26  determines facts where jurisdictional issue and merits are intertwined).

1  National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803

2  (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).

3  Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

4  Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

5         The court may consider facts established by exhibits attached to the complaint.

6  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also

7  consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d

8  1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other

9  papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir.

10  1986).  The court need not accept legal conclusions "cast in the form of factual allegations."

11  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

12         A pro se litigant is entitled to notice of the deficiencies in the complaint and an

13  opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See

14  Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

15      II.  District Judge Jerry Buchmeyer

16         On October 29, 2009, a suggestion of death was filed concerning defendant

17  District Judge Jerry Buchmeyer.  No motion to substitute a proper successor has been made in

18  accordance with Fed. R. Civ. P. 25(a)(1), and in accordance with that rule, the action against

19  Judge Buchmeyer "must be dismissed."[4]  Therefore, the undersigned will recommend that Judge

20  Buchmeyer be dismissed from this action with respect to every pertinent claim.

21      III.  Personal Jurisdiction Over Defendants Ely, Fonda, and Norris

22         These defendants, without support by declaration or other evidence outside the

23  Complaint, seek to be dismissed from this lawsuit in California because of a lack of personal

24

25         [4] Plaintiffs' frivolous attempt to name as successor another United States District Judge
for purposes of this damages action, The Honorable Reed O'Connor, see Docket #34 at, who
apparently has taken over some or all of Judge Buchmeyer's caseload, will not be recognized as
26  an effective substitution of Judge Buchmeyer's estate in this action.

1    jurisdiction.  However, because plaintiffs have utterly failed in their initial burden to establish

2    personal jurisdiction; indeed, they have not opposed dismissal on this ground in any meaningful

3    way, <u>see</u> Opposition, Docket #33,  these defendants' motions should be granted.

4           California's long-arm statute authorizes the exercise of personal jurisdiction to the

5    extent consistent with the United States Constitution.  Cal.Code Civ. Proc. § 410.10.  As to

6    federal law, the exercise of personal jurisdiction over a non-resident defendant is limited by the

7    Due Process Clause of the Fourteenth Amendment.  <u>Tuazon v. R.J. Reynolds Tobacco Co.</u>, 433

8    F.3d 1163, 1168-69 (9th Cir.2006) (*citing* <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>,

9    466 U.S. 408, 413-14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

10          Personal jurisdiction over a non-resident is proper if there is either general or

11   specific jurisdiction.  General jurisdiction requires that defendants have activities in California

12   that are so "substantial, continuous, and systematic that the defendant can be deemed to be

13   'present' in that forum for all purposes."  <u>Yahoo! Inc. v. La Ligue Contre Le Racisme</u>, 433 F.3d

14   1199, 1205 (9th Cir.2006) (en banc).   Based on this definition, general jurisdiction is not

15   implicated in this case as these defendants do not have activities in California which rise to such

16   a level.

17          Specific jurisdiction may occur where a defendant has sufficient contacts such that

18   constitutional principles of due process are not offended.  <u>Burger King Corp. v. Rudzewicz</u>, 471

19   U.S. 462, 477-78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); <u>Schwarzenegger v. Fred Martin Motor</u>

20   <u>Co.</u>, 374 F.3d 797, 802 (9th Cir. 2004).

21              First, the defendant must "purposefully avail" itself of the privilege
                of conducting activities in the forum, thereby invoking the benefits
22              and protections of its laws. Second, the claim must arise out of the
                defendant's forum-related activities, and third, the exercise of
23              jurisdiction must be reasonable. <u>Fred Martin Motor Co.</u>, 374 F.3d
                at 802.
24
                In determining whether the claim arises out of the defendant's
25              forum-related activities, the Ninth Circuit applies a "but for" test: if
                plaintiff's injury would not have occurred but for defendant's
26              forum-related activities, the claim arises out of those activities.

1         Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d 857, 864 (9th
       Cir.2003), Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir.1995).

2

3         If the first two steps are satisfied, the burden is on the defendant to
       show that exercise of jurisdiction does not comport with "fair play
       and substantial justice," and is therefore unreasonable. Burger

4         King, 471 U.S. at 476. To determine whether the exercise of
       specific personal jurisdiction over a defendant would be

5         "reasonable", the court examines seven factors: 1) the extent of
       defendant's purposeful interjection into the forum; [footnote

6         omitted] 2) the burden of defending the suit in the forum; 3) the
       extent of conflict with the sovereignty of the defendant's state; 4)

7         the forum state's interest in the dispute; 5) the most efficient forum
       for judicial resolution of the dispute; 6) the importance of the

8         chosen forum to the plaintiff's interest in convenient and effective
       relief; and 7) the existence of an alternative forum. Gray & Co.,

9         913 F.2d at 761.

10  Lansing v. Feast at Lele, 2009 WL 800228, *2-3 (E.D. Cal. 2009).

11         Plaintiff bears the burden of establishing that the exercise of jurisdiction is proper

12  when challenged by a defendant.  Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir.

13  2006).  However, plaintiff's burden is light when the issue is presented by a motion to dismiss

14  and the court does not hold an evidentiary hearing:  "the plaintiff need only make a prima facie

15  showing of jurisdictional facts to withstand the motion."  Doe v. Unocal Corp., 248 F.3d 915,

16  922 (9th Cir. 2001).

17         Plaintiffs have not opposed defendants' argument in regard to personal

18  jurisdiction.  See Oppo., filed December 18, 2009 (dkt. # 33), (incorporating by reference

19  plaintiffs' opposition to United States' motion to dismiss at dkt # 34).  Defendants point out that

20  the only allegation against defendant Fonda is that she supplied information to defendant Ashton

21  which he used in his affidavit to support the arrest warrant.  (Compl. ¶¶ 32, 95.)  Plaintiffs do

22  not allege that Fonda has any contacts with the state of California.  As for defendant Ely, the only

23  allegations against him are that he received a copy of a letter that plaintiff Lonnie Schmidt sent to

24  defendant Amador, that he is pursuing defendant Daniel Schmidt, and that as U.S. Marshal for a

25  district in Texas, he knew or should have known that deputy U.S. Marshals were violating the

26  constitution, federal law and agency regulations.  (Id. at ¶¶ 29, 51, 54.)  There are no allegations

1   that Ely had any contacts with California.  Defendant Norris is alleged to have contact with

2   California on September 26, 2006 because he was present when property belonging to plaintiffs

3   Daniel and Rebecca Schmidt was seized inside this state.  (Compl. ¶ 41.)  This is the only alleged

4   contact by defendant Norris with the state of California.  Most of the allegations against this

5   defendant are that as attorney for the SEC, he filed a civil action against non-party Cook, and

6   conspired to hold Lonnie Schmidt in contempt by petitioning the Texas court.  (Id. at ¶¶ 10, 42.)

7       As plaintiffs have not established the first two steps by showing that defendants

8   purposefully availed themselves of the privilege of conducting activities in this state, and that

9   their injury would not have occurred but for defendants' forum related activities, defendants do

10  not have the burden to establish that the exercise of jurisdiction is unreasonable.  Therefore,

11  defendants' motion should be granted in regard to defendants Ely, Fonda and Norris.

12      At this stage, the only viable, individual Federal Defendants are former Marshal

13  Amador and Deputy Ashton.

14      IV.  Motion to Dismiss by United States

15      The Government alleges the following grounds for dismissal: lack of jurisdiction

16  under the Federal Tort Claims Act, this action violates the provisions of the Receivership Order

17  in the Texas action, res judicata, plaintiffs lack standing, sovereign immunity, and failure to state

18  a claim.

19      Leaving aside the FTCA Count for the moment, sovereign immunity bars each

20  and every subsequent count in which the United States is specifically named or in which the

21  United States would be considered under "All" defendants.  Given the nature of the factual

22  allegations in paragraphs 1- 71 of the Complaint, all of the counts sound in tort.  However, 28

23  U.S.C. § 2679(b)(1) provides that the FTCA is the exclusive remedy against the United States for

24  property loss or personal injury resulting from the alleged wrongful (tortious) act of a

25  government employee acting within the course and scope of employment.  Plaintiff alleges that

26  all federal defendants were so acting (Complaint, paragraph 73).  Therefore, the United States

1   must be dismissed from all other claims, aside from Count I, on the basis of sovereign immunity.

2   However, the court cannot finally decide the motion of the United States with

3   respect to Count I at this point.  The United States asserts that plaintiffs did not file

4   administrative claims which covered all of the incidents complained about, and did not timely

5   file the claims.  Plaintiffs claim that they filed adequate and timely claims. However, no

6   authenticated claims exhibits have been submitted, and the allegations of the complaint are not

7   sufficiently clear to rule on this matter without the exhibits.  The United States asserts that all of

8   the claims are barred by *res judicata*; yet no exhibits of the pleadings, briefs or orders which

9   would show what was ruled upon in the previous actions have been submitted.  Moreover, while

10  some of the claims may have been decided in the Texas actions, some of plaintiffs' conflated

11  claims relate to the *manner* in which searches, seizures or arrests were made, and not just the

12  initiation of those activities.  Finally, the United States makes no cogent argument how the action

13  preclusion order of Judge Buchmeyer, limited to actions that "involve the Receiver," or "affect

14  Receivership Assets" can be applied to non-Receiver defendants for alleged torts committed in

15  the arrest and searches involving all plaintiffs.  Certainly some of the claims may be barred, but

16  the "manner in which" searches et al. were conducted are not barred by the preclusion order.

17  As set forth above, issues of subject matter jurisdiction and grounds for dismissal

18  aside from failure to state a claim may be adjudicated on evidence submitted outside the record.

19  The undersigned will not adjudicate the motion without such evidence before it.  Therefore, the

20  parties have 30 days from the filed date of this Findings/Order to submit evidence which supports

21  their position regarding administrative claims, and the United States has 30 days in which to file

22  appropriate exhibits regarding *res judicata*, i.e., exhibits which would show what was at issue in

23  another action, and how the action was ruled upon.

24  V. State Law Claims

25  The United States appears to believe that allegations in the complaint concerning

26  "course and scope of employment," see para. 73 of the Complaint, may be relied upon to avoid

13

an affirmative certification by the Attorney General for purposes of 28 U.S.C. § 2679(b).  The

undersigned knows of no authority for such a proposition.  Nor does it make sense to have the

plaintiffs in an action decide the course and scope issue.  There may be cases in which the

Attorney General does not believe that certification would be appropriate, and the Attorney

General should not be bound by the assertions of plaintiffs to the contrary.

Therefore, the United States has 30 days after adoption/rejection of this

Findings/Order to file appropriate certifications for remaining defendants, if indeed that is the

position of the Attorney General.[5]

VI. Claims Based on 42 U.S.C. § 1983

Plaintiffs have 30 days in which to identify state actors involved in the allegations

of Claim III.  Otherwise the claim will be dismissed.

VII. Bivens Claims

As already stated, the only federal defendants remaining in the lawsuit are former

Marshal Amador and Deputy Marshal Ashton.  The only specific facts involving these

individuals commences with paragraph 27 of the Complaint:

Paragraph 27– Judge Buchmeyer issued an finding of contempt against Lonnie Schmidt;

Paragraphs 28 and 29– Lonnie Schmidt sent two letters to Marshal Amador complaining of

judicial misdeeds in Texas, ostensibly regarding the contempt finding and the arrest of other

individuals;

Paragraph 32– Lonnie Schmidt was arrested on July 7, 2005 in Clovis, California in the presence

of other unwilling plaintiffs; plaintiffs complain of this arrest in both its fact *per se* and the

means by which the arrest was effectuated.  Deputy Ashton played a significant role in this

incident.

---

[5]  The undersigned has found thus far that the only federal individuals amenable to suit in
California are former Marshal Amador and Deputy Marshal Ashton.  Should this finding be
upheld, certifications would only be necessary for these two individuals.

The only operative allegations (conclusions) specifically against Marshal Amador appear in paragraph 51 (Marshal Amador, amongst others, is still pursuing Daniel Schmidt pursuant to orders of the Texas federal court as of the filing of the Complaint), and paragraphs 53-66 (which assert that Marshal Amador failed to properly train his deputies (Ashton) and otherwise failed to punish (Ashton) for his misdeeds). Being in pursuit of a person pursuant to court order in no way states a cognizable <u>Bivens</u> claim. Because the only remaining specific facts regarding Eastern District deputies involve the July 7, 2005 incident (the arrest of Lonnie Schmidt and the way it was conducted), all of plaintiffs' claims against these individuals must relate to that date.[6]

It is difficult for the court to ferret out those specific Counts which relate to Amador and Ashton as the Counts as phrased simply and generally incorporate all the factual allegations in the Complaint and mostly impugn the actions of "all" defendants regardless of incident or date. However, since the specific factual allegations related to Amador and Ashton involve only the July 7 incident, all <u>Bivens</u> federal constitutional tort claims[7], Counts II, IV, VII, VIII, IX, X,, XI, XII, to the extent they involve these two individuals, are clearly barred by the statute of limitations on the face of the complaint save for one plaintiff. Further, no claim of equitable tolling can save those claims.

<u>Van Strum v. Lawn</u>, 940 F.2d 406, 410 (9th Cir. 1991), held that the forum state's personal injury limitations period governed the limitations period for a <u>Bivens</u> [8] action. In California that statute was, at pertinent times, two years. Cal. Code Civ. Pro.335.1. <u>See Jones v.</u>

---

[6] Paragraph 41 purportedly makes a factual assertion that *non-party* R. Schmidt had his home entered by previously dismissed and presently recommended to be dismissed defendants "with the cooperation of the U.S. Marshal Service, Eastern District of California," and that property belonging to the non-party and party Rebecca Schmidt was seized at that time. These facts in no way state a <u>Bivens</u> claim against Marshal Amador.

[7] Claims based on alleged violations of the California Constitution would be state law claims subject to certification and FTCA provisions.

[8] <u>Bivens v. Six Unkn own Named Agents</u>, 403 U.S. 388, 91 S.Ct. 1999 (1971).

1  Blanas, 393 F.3d 918, 927 (9th Cir. 2004).  On its face, therefore, this action filed on March 10,

2  2009 is quite untimely.

3          However, two aspects regarding equitable tolling suggested by the Complaint are

4  required to be discussed.  The first possibility is a tolling while other remedies involving the

5  same "wrong" were pursued.  See Lucchesi v. Bar-O-Boys Ranch, 353 F.3d 691 (9th Cir. 2003).

6  However, even assuming for the moment that plaintiffs could meet the test, the Bivens claim

7  remains time barred.

8          Giving plaintiff the benefit of every doubt, and assuming that all the letters filed

9  were valid administrative claims, the Complaint asserts that the first FTCA claim was filed on

10  February 16, 2007 by all plaintiffs aside from Lonnie Schmidt.  This latter person did not file a

11  claim until July 3, 2007.  The February 16 filing date (applicable to all plaintiffs except for

12  Lonnie Schmidt) occurred one year, six months and nine days into the two year period in which

13  to file the Bivens claim against Amador and Ashton, i.e., equitable tolling commenced when a

14  substantial part of the limitations period expired.  Thus, any tolling applicable to these plaintiffs

15  commenced after a substantial period of the limitations period had been expended.   Lonnie

16  Schmidt used up nearly the entire two year period before filing any claim, i.e., only two days

17  were left in his time period.  Denials of these administrative claims were received on September

18  9, 15 and 17–2008 according to the complaint (para. 76), except for those claims made by Daniel

19  and Rebecca Schmidt which were deemed denied as a matter of law six months after they were

20  made (id), i.e., August 16, *2007*.  The limitations period recommenced running as of these

21  various different denial times.

22          The complaint was not filed until March 10, 2009.  Equitable tolling based on

23  pursing other remedies cannot in any way assist Lonnie Schmidt who only had two days in which

24  to file a Bivens claim after its denial in September 2008.  Therefore, Lonnie Schmidt, who

25  received his denial on September 17, 2008 (para.76) filed his Bivens claim substantially out of

26  time.  Rebecca and Daniel Schmidt's time in which to file a Bivens claim against Amador and

1   Ashton expired in February *2008*; again, counting the equitable tolling.

2          Connie Schmidt received her administrative denial on September 9, 2008, and the

3   three Manzers and both Marias on September 15, 2008.  As shown above, these persons had

4   expended one year, six months, and nine days of the two year Bivens limitations period prior to

5   filing their administrative claims.  Put another way, these plaintiffs had five months and 22 days

6   left in which to file a Bivens claim after the administrative denial.  The action in this court, filed

7   on May 10, 2009, was filed five months and 23 days after the September 17, 2008 denial and five

8   months and 29 days after the September 9 denial.  Again, even with equitable tolling for the

9   period the administrative claims were pending, these plaintiffs fall short.

10          Lonnie Schmidt could argue that he is entitled to equitable tolling for the time he

11  was incarcerated, i.e. from July 7, 2005 to May 29, 2007, even though he was a civil detainee.

12  See Jones v. Blanas, 393 F.3d 918, 927-930 (9th Cir. 2004) interpreting Cal. Code of Civ.Pro. §

13  352.1.  However, Jones did not mandate the application of California's criminal incarceration

14  tolling.  It reviewed the circumstances of Jones' civil detainment, and found that in *that* case the

15  harsh circumstances of his civil incarceration precluded him from filing an action within the time

16  he was civilly incarcerated.  As the facts set forth by the government demonstrate, the situation

17  was different for Lonnie Schmidt.  He was representing himself in the Texas court, and was also

18  able to file serial habeas actions in the Fifth Circuit while he was incarcerated.  Schmidt v. Joslin,

19  No. 3-05-CV-1449 P (N.D. Tex. Jul. 29, 2005) (frivolous), Schmidt v. Joslin, No. 3-06-CV-

20  0731-B, 2006 WL 1499773 (N.D. Tex. May 31, 2006) (res judicata), Schmidt v. U.S. Marshals

21  Service, No. 3-06-CV-1940-L, 2006 WL 3478030 (N.D. Tex. Nov. 30, 2006) (duplicative).  If

22  Lonnie Schmidt was concerned about the manner in which he was arrested on July 7, 2005, he

23  did not suffer the inability to file actions concerning that matter while in prison.

24          The only plaintiff who can claim an appropriate tolling is Jordyn Manzer, who

25  was a minor at the time this action was filed.  Under California law, a minor's time in which to

26  file an action is tolled until the time he reaches the age of majority.  Cal. Code Civ. P. 352.

Plaintiffs claim in their opposition that he has now reached the age of majority.  Since the initial

action was brought on behalf of Jordan Manzer by non-qualified lay persons, his action will be

dismissed with leave to amend (30 days).  <u>See</u> footnote 2.  Jordan Manzer must file his amended

complaint either through bar certified counsel or pro se.  He may not be represented by non-

attorney family members.

*Conclusion*

As to other grounds for dismissal raised by the Federal Defendants not discussed

herein, the undersigned exercises his discretion not to reach them as such may well prove to be

unnecessary if the Findings below are adopted  by the court.  Moreover, grounds for dismissal

such as absolute immunity for following a court order must be directed only to the specific

claims, or parts of claims, involving following a court order.  Such grounds for dismissal may be

brought in a later motion, if necessary, and if properly directed/supported.

IT IS HEREBY ORDERED:

1. The parties have 30 days in which to file appropriate exhibits regarding the

filing of FTCA administrative claims;

2. The United States has 30 days in which to file appropriate exhibits regarding

res judicata;

3. The United States has 30 days after adoption/rejection of the Findings and

Recommendations in which to file certifications of scope of employment for any defendants

remaining in this lawsuit with respect to state law claims;

4. Plaintiffs have 30 days in which to identify appropriate § 1983 Doe defendants,

i.e., persons acting under color of state authority.

IT IS HEREBY RECOMMENDED that:

1.  The motions to dismiss filed by the United States and defendants Ashton,

Amador, Fonda, Ely and Norris on October 29, 2009 (dkt #'s 24, 26) be granted in part and

denied in part;

2.  Deceased defendant Judge Buchmeyer be dismissed;

3.  Defendants Ely, Fonda and Norton be dismissed for lack of personal jurisdiction;

4.  The United States be dismissed from every Count except for Count I;

5.  <u>Bivens</u> claims against defendants Amador and Ashton, with the exception of Jordyn Manzer's claim, be dismissed on the basis of the statute of limitations;

6.  All of Jordyn Manzer's claims, improperly brought on his behalf when he was a minor, be dismissed with leave for him to file an amended complaint within 30 days either through counsel or personally pro se.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge"s Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 05/27/2010

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
U. S. MAGISTRATE JUDGE

GGH:076/Schmidt0660.mtd2.wpd