IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LONNIE G. SCHMIDT, et al.,

            Plaintiffs,                CIV. NO. S-09-660 LKK GGH PS

        vs.

UNITED STATES OF AMERICA, et al.,

            Defendants.           <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

*Introduction and Summary*

       This is the third dispositive motion proceeding in the above referenced case.  The historical adage: *You have to know where you've been before you know where you're going*, is especially pertinent here.   The undersigned will first give a concise background which lays out the general nature of this case.  Thereafter, the undersigned will detail:

1. The defendants remaining;

2. The claims pertinent to any remaining defendants and the plaintiff(s) related to those claims;

3.  The precise issues to be determined in this case;

1

4. The recommended determination of those issues.

After extensive review, the undersigned concludes that most of the claims against the remaining defendants be dismissed. These Findings and Recommendations will help to bring order to a case potentially spinning out of control.

*Procedural Background*

The action is part of the continuing saga involving these plaintiffs in what probably can be construed as spite litigation. The initiation of the saga involved the filing of lawsuits by the Securities and Exchange Commission (SEC) in federal court in Texas against individuals not plaintiffs herein. Apparently, however, some of the plaintiffs herein were in possession of assets subject to seizure by a court appointed receiver. A lengthy history of conduct contemptuous of the Texas federal court by Lonnie and Daniel Schmidt ensued, resulting in arrest warrants being issued, and the actual incarceration of Lonnie Schmidt for a substantial period of time. It also appears that plaintiff Daniel Schmidt was a longtime fugitive on an outstanding arrest warrant issued by the Texas federal judge. The receiver appointed in the Texas actions has sought to seize assets of the plaintiffs in order to comply with his appointing authority orders. The remaining plaintiffs allege that they were "victims" of the enforcement of the federal court orders and the appointed receiver's orders.

Defendants in these actions are grouped into two sets: the Receiver defendants (Warfield, Crawford, Murphy and Atwood) and the Federal Defendants (the United States, United States District Judge Buchmeyer, United States Marshal Antonio Amador, Deputy Marshals Timothy Ashton, Marta Fonda, Randy Ely, and SEC Attorney, Jeffrey Norris). The undersigned issued Findings and Recommendations with respect to the Receiver defendants on March 16, 2010, in which the undersigned recommended the dismissal of the Receiver defendants based on quasi-judicial immunity. This recommendation was adopted by the district judge on July 28, 2010, and these defendants have been dismissed from the case. Insofar as several of the claims only involved these defendants, the undersigned will detail such in the

2

sections regarding remaining claims below.

With respect to the federal defendants, Judge Buchmeyer was dismissed as he is deceased, and no appropriate substitution was tendered.  See Findings and Recommendations dated May 27, 2010, and the district judge adopting same of July 28, 2011.[1]  In that same order, defendants Ely, Fonda and Norton were dismissed for lack of personal jurisdiction.  Thus, the only defendants remaining in the case in any respect were the United States, and individual defendants Amador and Ashton.

The second ruling further dismissed nearly all claims as well as defendants pertinent to those claims, or barred many claims based on the applicable statute of limitations.  All claims against federal defendants, with the exception of Amador and Ashton, were barred on account of a lack of personal jurisdiction.   Claims against the United States were limited to Claim I.  Plaintiff Jordyn Manzer was not barred by a limitations defense as she was under legal age until fairly recently.  She was given to leave to amend to fully state her individual claims.  Instead of doing that, she simply amended her status as a "full age" woman, and then "reiterated (verbatim) *all* claims of *all* plaintiffs and assuming that *all* defendants were still in the case.  The amended complaint is drafted as if the first and second rulings were irrelevant.  However, rather than strike her amended complaint on account of ignoring the district court's orders, and thereby take more time in the final analysis, the undersigned will analyze each pertinent claim as presented for which she provides any actionable allegations personal to her.

The amendment by Jordyn Manzer leaves the case in a bit of a procedural twist.  The original complaint filed by all plaintiffs remains open, as the court required the United States to seek certification that its employees were acting within the course and scope of their employment before it ruled on the state law claim and the FTCA claim.  The Manzer amended complaint remains open as well.  Nevertheless, because the two complaints are substantively

---

[1]There were two separate orders adopting the recommendations filed on July 28, 2010.

3

1   identical, indeed for all substantive purposes *verbatim* identical, the undersigned can consolidate

2   a dispositive ruling on the two complaints.

3           After the second ruling by Judge Karlton, and with respect to these remaining

4   defendants, the only possible claims remaining at issue in both identical complaints, and the

5   plaintiff's/defendants potentially involved are:

6   Claim I– FTCA claim encompassing allegations of malicious prosecution, malicious abuse of the

7   legal process, abuse of process, assault, battery, false arrest etc.:

8           Plaintiffs: All

9           Defendants– United States

10  Claim II– <u>Bivens</u> actions for violation of [various amendments]

11          Plaintiffs: Jordyn Manzer (all other plaintiffs' claims were dismissed on statute of

12  limitations grounds)

13          Defendants: Amador and Ashton

14          The only constitutional claim at issue concerns these two defendants' actions with respect

15  to Manzer at the time of Lonnie Schmidt's arrest.

16  Claim III- 42 U.S.C. § 1983 actions against non-defendant California city and county officials for

17  violations of various constitutional rights;

18          Plaintiffs: All

19          Defendants: None.  No remaining federal defendants are state actors; the undersigned will

20  recommend that plaintiffs be given a short time period to serve the now identified state

21  defendants, and no further discussion will be made of this claim.[2]

22  Claim IV-- Conspiracy Claim under <u>Bivens</u> and § 1983

23  _____

24  [2]This claim alleges unconstitutional actions with respect to the arrest of Lonnie Schmidt
    and searches related to the Texas action.  The allegations are fairly conclusory.  Plaintiff
    identified the state Doe defendants, Docket # 44 at 4 as required by a previous court order;

25  however, plaintiffs have never moved to amend the complaint to substitute these individuals, and
    of course, have not served them.  The undersigned will recommend that these defendants be

26  named in an amended complaint and served quickly.

1    Plaintiffs: Jordyn Manzer

2    Defendants: Amador and Ashton to the extent a conspiracy could be alleged for any

3 actions taken against Jordyn Manzer.

4 Claim V-- State law claim for malicious prosecution–

5    Plaintiffs: All

6    Defendants: None remaining.  This claim was stated against the receiver defendants only,

7 and none of them remain in the case.  This claim should be finally dismissed, and no further

8 discussion will be made.

9 Claim VI– State law claim for conspiracy

10    Plaintiffs: All

11    Defendants: this claim contains a mixture of receiver defendants (dismissed) and federal

12 defendants; the only defendants not dismissed on immunity or personal jurisdiction are Amador

13 and Ashton.

14 Claim VII- Unlawful search and seizure based on the California Constitution and the Fourth

15 Amendment

16    Plaintiffs: To the extent there exist any pertinent allegations, Jordyn Manzer only with

17 respect to the Fourth Amendment claim; all plaintiffs with respect to the California Constitution

18 claim.

19    Defendants: Amador and Ashton

20 Claim VIII: Trespass for assault and battery based on the California Constitution and Fourth

21 Amendment

22    Plaintiffs: Same as for Claim VII.

23    Defendants: Ashton and Amador

24 Claim  IX- False arrest and imprisonment based on the California Constitution, the Fourth

25    Amendment and 18 U.S.C. § 4001

26    Plaintiffs: Same as for Claim VII.

1    Defendants: Amador and Ashton

2  Claim X- Abuse of process (state law claim)

3    Plaintiffs: All

4    Defendants: Amador and Ashton

5  Claim XI– Deprivation of Due Process based on violation of the California Constitution and

6  Fifth Amendment

7    Plaintiffs: Same as for Claim VII

8    Defendants: Amador and Ashton

9  Claim XII – Denial of Counsel and Speedy Trial based on the Texas Constitution and Sixth

10  Amendment

11    Plaintiffs: All

12    Defendants: Amador and Ashton

13  Claim XIII – Interference with Contractual Relations, a state law claim

14    Plaintiffs : All

15    Defendants: Amador and Ashton

16  Claim XIV– Libel and Slander, a state law claim

17    Plaintiffs: All

18    Defendants: Amador and Ashton

19  Claim XV – Nuisance Claim, a state law claim

20    Plaintiffs: All

21    Defendants: Amador and Ashton

22  Claim XVI – Infliction of Emotional Distress, a state law claim

23    Plaintiffs: All

24    Defendants: Amador and Ashton

25  Claim XVII – Intentional and Negligent Infliction of Emotional Distress, a state law claim

26    Plaintiffs: All

1    Defendants: Amador and Ashton

2  Claim XVIII – Conversion, a state law claim

3    Plaintiffs: All

4    Defendants: Amador and Ashton

5  Claim XIX – "Value of Plaintiff's Time," a state law claim if at all

6    Plaintiffs: All

7    Defendants: Amador and Ashton

8  Claim XX – Racketeering pursuant to 18 U.S.C. § 1962(d);

9    Plaintiffs: All

10    Defendants: Amador and Ashton

11  Count XXI – Imposition of a Constructive Trust, a state law claim

12    Plaintiffs: All

13    Defendants: Amador and Ashton

14        Only one claim has been completely dismissed at this point, Claim V, as that

15  claim related to the receiver defendants who have been completely dismissed.   The undersigned

16  will address the remaining claims in the following order:

17  1. State Law claims, including claims brought pursuant to the California or Texas Constitutions

18  2. FTCA Claim (Claim I) against the United States

19  3. Federal Constitution Claims- Jordyn Manzer only

20  4. RICO Claim

21        State Law Claims

22        The Attorney General has certified that defendants Amador and Ashton were

23  performing their duties in the course and scope of their employment with respect to all activities

24  alleged by plaintiffs.  (Docket # 47.)  Plaintiffs cannot dispute that certification-- in paragraph 73

25  of the original complaint and in that same paragraph of the Manzer amended complaint, it is

26  alleged: "At all times material to this complaint, Ashton...Amador...and the other agents and

1  employees of the Department of Justice, the United States Marshall [sic] Service and Federal

2  Courts referred to herein, were acting within the course and scope of their employment."

3          As such, a Federal Tort Claims Act (FTCA) becomes the exclusive legal method

4  by which the individual defendants or the United States may be sued.  28 U.S.C. § 2679(b)(1).

5  This is so even if, ultimately, no viable action under the FTCA exists.  United States v. Smith,

6  499 U.S. 160, 165, 111 S.Ct. 1180, 1184-85 (1991).  Only two statutory exceptions to the above

7  law regarding individual immunity exist: claims based on the *federal* Constitution, and claims

8  based on *federal* statutes.  Section 2679(b)(2).  All monetary damages claims based on state law

9  against individual federal government employees are barred, §2679(b)(1), including claims based

10 on a state constitution.  Salafia v. United States, 578 F.Supp. 2d 435, 442 (D. Conn. 2008);

11 McCabe v. Macculay, 450 F.Supp. 2d 928, 939-940 (N.D. Iowa 2006); Chin v. Wilhem, 291 F.

12 Supp.2d 400, 405 (D.Md. 2003).

13          Therefore, all state law claims pursued against Amador and Ashton in either

14 complaint must be dismissed, and incorporated, if at all, into an FTCA claim ( Claim I) against

15 the United States.  Accordingly: Claims VI, VII (California constitutional claims only[3]), VIII

16 (California constitutional claims only), Claim IX (California constitutional claims only), Claim

17 X, Claim XI (California constitutional claims only), Claim XII (Texas constitutional claims

18 only), Claims XIII, XIV, XV, XVI, XVII, XVIII, XIX, XXI, should be dismissed in both

19 complaints.

20     FTCA Claims (Claim I)

21          Whatever the nature of the state claims and their ultimate legal viability under the

22 FTCA, the United States seeks dismissal of the FTCA claim (incorporating the state law claims)

23 on account of untimely exhaustion.  Because the parties had not submitted satisfactory proof with

24

25          [3]Only Jordyn Manzer maintains at this time claims based on the *federal* Constitution, all
   other plaintiffs' claims having been dismissed.  The undersigned will address those  Manzer
26 federal constitutional claims in later sections.

1   respect to the exhaustion question (a Fed.R.Civ.P. 12 (b)(1) issue), the undersigned previously

2   ordered supplementation of the documentation.  Thus the *only* issue regarding the FTCA claims

3   is the timely status of their administrative filing and the timely filing of the FTCA claim in this

4   court after denial of the administrative claims.[4]

5          The timely filing of an FTCA administrative claim, and the timely filing of a court

6   action after an FTCA administrative denial,  28 U.S.C. § 2401(b), are two of the vanishing

7   species of timeliness provisions whose requirements are considered jurisdictional.  <u>Dyniewicz v.</u>

8   <u>United States</u>, 742 F.2d 484, 485 (9th Cir. 1984) (two years to file administrative claim from

9   accrual date is jurisdictional);  <u>Marley v. United States</u>, 567 F.3d 1030, 1038 (9th Cir.

10  2009):"[W]e hold that the six-month statute of limitations in § 2401(b) is jurisdictional and that

11  failure to file a claim within that time period deprives the federal courts of jurisdiction.

12  Accordingly, the doctrines of equitable estoppel and equitable tolling do not apply.").

13          A claim accrues when a plaintiff knows that he has been injured
        and who has inflicted the injury. *United States v. Kubrick*, 444 U.S.
14      111, 122-23, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Accrual of a
        claim does not "await awareness by a plaintiff that his injury has
15      been negligently inflicted." *Id.* at 123, 100 S.Ct. 352. As we have
        pointed out, "It is well settled that the limitations period begins to
16      run when the plaintiff has knowledge of injury and its cause, and
        not when the plaintiff has knowledge of legal fault." *Rosales v.*
17      *United States*, 824 F.2d 799, 805 (9th Cir.1987).

18  <u>Winter v. United States</u>, 244 F.3d 1088, 1090 (9th Cir. 2001).

19  The claim must be *received* by the agency within the two year period; there is no "mailbox rule"

20  for FTCA administrative claims.  <u>Vacek v. U.S. Postal Service</u>, 447 F.3d 1248, 1252 (9th Cir.

21  2006).  Plaintiff has the burden of proving exhaustion.  <u>Id</u>.

22          Firstly, no administrative tort claim was ever sent to any agency aside from the

23  United States Marshal Service.  Therefore, to the extent any claim could have been stated against

24  _____

25          [4]This is not to say that many of the claims would survive later scrutiny.  There are many
    exceptions to United States liability under the FTCA, but as they have not been raised by the
    United States, they will not be determined here.  For purposes of the United States' initial
26  motion, all state claims will be assumed to be actionable under the FTCA.

the United States on account of the actions of a judicial defendant, or a court appointed receiver,

the court lacks jurisdiction over such an action, no administrative claim ever having been sent to

the Administrative Office of United States Courts.  The undersigned is aware of regulations

governing the filing of administrative claims when more than one agency is involved, 28 CFR §

14.2, the pertinent part of which is quoted below:

> (b) (1) A claim shall be presented to the Federal agency whose activities gave rise to the claim. When a claim is presented to any other Federal agency, that agency shall transfer it forthwith to the appropriate agency, if the proper agency can be identified from the claim, and advise the claimant of the transfer. If transfer is not feasible the claim shall be returned to the claimant. The fact of transfer shall not, in itself, preclude further transfer, return of the claim to the claimant or other appropriate disposition of the claim. A claim shall be presented as required by 28 U.S.C. 2401(b) as of the date it is received by the appropriate agency.
>
> (2) When more than one Federal agency is or may be involved in the events giving rise to the claim, an agency with which the claim is filed shall contact all other affected agencies in order to designate the single agency which will thereafter investigate and decide the merits of the claim. In the event that an agreed upon designation cannot be made by the affected agencies, the Department of Justice shall be consulted and will thereafter designate an agency to investigate and decide the merits of the claim. Once a determination has been made, the designated agency shall notify the claimant that all future correspondence concerning the claim shall be directed to that Federal agency. All involved Federal agencies may agree either to conduct their own administrative reviews and to coordinate the results or to have the investigations conducted by the designated Federal agency, but, in either event, the designated Federal agency will be responsible for the final determination of the claim.

The undersigned has reviewed all of the claims and attached information provided

by plaintiffs.  (Docket # 44.)  None of the information presented has to do with any of the Texas

activities complained of in the complaint; *all* of the claims have to do with activities in California

in effectuating the Texas arrest order.  If the administrative claims could be fairly read to

encompass the Texas activities, the undersigned would give the pro se plaintiffs the benefit of the

doubt and liberally construe it.  However, liberal construction is not a license to make up

allegations out of whole cloth.  Any reasonable federal official reading the administrative claims

1   would have thought that the claims related only to activities of the California Marshal personnel.[5]

2          Secondly, the claims submitted do not reveal any claim made by, or on behalf of,

3   Jordyn Manzer.  While her parents made a claim, that is the extent of it.  The Claim form filed by

4   the Manzers, see Docket #44, states: "Don and Deborah Manzer, husband and wife, hereby

5   jointly make claim against the United States...."   While Jordyn Manzer is later referenced in the

6   body of the claim as part of the factual basis for the Manzer adult claims, no claim was ever filed

7   on behalf of Jordyn Manzer, and no claim has been filed to this date.  Therefore, Jordyn

8   Manzer's  FTCA claim should be dismissed as the filing of administrative tort claims is

9   jurisdictional.  Marley, supra.

10          That leaves the administrative claims of the remaining plaintiffs against the

11  United States on account of the California arrest and search activities of 2005.  The United States

12  makes several errors in asserting that the administrative claims were not timely filed, including

13  errors in counting days.

14          Again, despite the undersigned's prior findings, and the district judge adoption of

15  those findings, the United States essentially asserts that the claims in this case are monolithic in

16  nature, i.e., that they *all* date from the deceased Texas judge's order of January 23, 2003 to have

17  Lonnie Schmidt found in contempt and arrested.  (Supplemental Briefing at 4.)  However, as

18  explained previously, while the Texas court orders, and the follow-up of the court appointed

19  receiver may be off limits for review here, see lack of administrative claim discussed above, the

20  method by which the arrest, searches and seizures were effected in California is a claim of an

21  entirely different nature.  (Findings and Recommendations of May 27, 2010 at 13.)  The

22

---

23          [5]Thus, the *res judicata* defense of the United States is a defense looking for a claim.  The
     Texas events are precluded by lack of an administrative claim, (or otherwise in these and prior
24   Findings/Orders), and the alleged excessive force et al. claims related to the California activities
     have nothing to do with orders of the Texas judge.  The United States does not, and could not,
25   assert that orders in the Texas case to arrest Lonnie Schmidt and search and seize materials, in
     California, could be performed in a tortious or constitutionally excessive manner.  Nothing more
26   will be said about *res judicata*.

1  administrative claims by plaintiffs do challenge these California activities.

2        The alleged date on which the enforcement activities commenced-- July 7, 2005

3  with the arrest of Lonnie Schmidt, is the pertinent date for the California allegations.  (Complaint

4  at para. 32.)  Plaintiffs challenge the actions of the government officials on and after that date,

5  including the September 28, 2006 search and seizure at the Schmidt home and the November 1,

6  2006 search and seizure at the home of Deborah Manzer.  (Complaint, paras. 41, 43.)[6]  The

7  administrative claims were received on February 22, 2007 and July 10, 2007.  Certainly, the 2006

8  events alleged were the subject of a timely administrative claim in that the claims must be filed

9  within two years of the alleged events.

10        However, for any claims relating to the July 7, 2005 arrest of Schmidt, i.e., the

11  manner in which it was effected, as well as any events which preceded the arrest, the claim of

12  Lonnie Schmidt is *untimely* in that his administrative tort claim was not received until July 10,

13  2007; therefore, Lonnie Schmidt may not pursue an FTCA claim for this arrest.

14        The United States asserts, however, that regardless of the timeliness of the filing

15  of the administrative claim, the filing of the complaint in court was not timely as to all plaintiffs–

16  the Complaint was filed on March 10, 2009.  The denials were issued on September 18, 2008

17  (Lonnie Schmidt's July 10, 2007 filing), and September 15, 2008 (the claims of Don and

18  Deborah Manzer, Eddie and Donna Maria), and September 9, 2011 (Connie Schmidt, Rebecca

19  Schmidt, Daniel Schmidt).  By simple calendar counting, the six month periods in which to file

20  the court action after an administrative denial were March 18, March 15 and March 9,

21  respectively.  The six month period starts to run on the date of *mailing* as reflected on a

22  registered or certified mailing receipt.  Section 2401(b); Lehman v. United States, 154 F.3d 1010,

23  1012-1013 (9th Cir. 1998).

24

25        [6]While all sorts of FTCA exceptions and immunities might apply to invalidate plaintiff's
California claims, those exceptions and immunities have not been raised by the United States and
26  are not before the undersigned.

1          The United States has produced the declaration of Gerald Auerbach and

2    authenticated exhibits showing the dates of mailing by registered or certified mailing as of the

3    dates listed above.  Supplemental Memorandum and attached declaration/exhibits (Docket #60).[7]

4    Therefore, to the extent there exist any viable claims, Lonnie Schmidt's *court* filing was timely

5    (but limited by the failure to file a timely administrative claim for the July 7 arrest); the claims of

6    Don and Deborah Manzer, Eddie and Donna Maria were filed timely, but the claims of Connie

7    Schmidt, Rebecca Schmidt, Daniel Schmidt were *untimely*.

8    In summary,

9    1. No FTCA claim exists for any plaintiff concerning any events taking place in Texas on

10   account of failing to file an administrative complaint;

11   2. Jordyn Manzer, never having filed an administrative claim, or never having one filed on her

12   behalf when she was a minor, should have her FTCA claim dismissed;

13   3. To the extent that Lonnie Schmidt has complained of any event predating July 7, 2005, his

14   FTCA claim should be dismissed;

15   4. The FTCA claims of Connie Schmidt, Rebecca Schmidt and Daniel Schmidt should be

16   dismissed because the complaint in this action was not timely filed;

17   5.  To the extent that any viable FTCA claim exists for events taking place in California, the

18   United States' motion to dismiss the claims of Don and Deborah Manzer, Eddie and Donna

19   Maria should be denied.

20          Federal Constitutional Claims-Jordyn Manzer Only

21          The United States seeks dismissal of any purported federal constitutional claims

22   by Jordyn Manzer because she simply copied the previous complaint which made no allegations

23   of deprivation of injury suffered by Jordyn Manzer, made a few allegations that she was now of

24   "full age," and therefore has not stated any Bivens constitutional tort claim.  The United States is

25

26          [7]Plaintiffs objection to the use of the declaration and exhibits are overruled.

1  entirely correct.

2          Judged from the facts in the administrative claim filed by the Manzer parents,

3  Jordyn was present in the home of Lonnie Schmidt (grandfather) when Lonnie was arrested on

4  July 7, 2005.   However, in the complaint and amended complaint, the name Jordyn Manzer does

5  not appear anywhere in the facts of the Schmidt arrest on July 7.  (Para. 32.)  The undersigned

6  will not repeat all the standard for a motion to dismiss as set forth in the second Findings, but

7  certainly a claim cannot be stated by complete silence as to any alleged unconstitutional activity

8  directed against a particular plaintiff.

9          The undersigned has scoured the original and amended complaints herein.  Aside

10 from simply identifying Jordyn Manzer, and an introductory paragraph which concludes that she,

11 along with everyone else was conspired against by all defendants, the amended complaint is

12 silent as to Jordyn Manzer.  The complaint contains no factual allegations setting forth a

13 plausible claim for relief on behalf of this plaintiff.  Indeed, her name is not even mentioned in

14 the lengthy recitation of substantive facts.  The undersigned has already commented upon the

15 complete lack of effort on the part of Jordyn Manzer to state a Bivens claim– she merely copied

16 the deficient allegations of the initial complaint which make no substantive reference to her in

17 the only paragraph in which she could have been involved.  The courts do not have unlimited

18 resources and time to await a satisfactory pleading which should have been filed already.  Jordyn

19 Manzer's amended complaint does not state a claim, and she should not be permitted further

20 amendment.

21         Therefore, Claims alleging violation of the federal Constitution, II, IV, VII, VIII,

22 IX, XI, XII, should be dismissed as to Manzer.  As all other plaintiffs previously had these claims

23 dismissed based on statute of limitations grounds, or lack of personal jurisdiction over the Texas

24 defendants, and as the state constitutional claims added have been recommended to be dismissed,

25 these claims should be dismissed in their entirety.

26         The RICO Claim (Claim XX)

1    The one remaining claim against Amador and Ashton, the only individual

2  defendants remaining in this lawsuit, is an alleged RICO claim, 18 U.S.C. 1962(d).[8]  This section

3  provides that a conspiracy to violate any of the preceding provisions of § 1962 is unlawful.

4  However, "'[p]laintiffs cannot claim that a conspiracy to violate RICO existed if they do not

5  adequately plead a substantive violation of RICO.'  Howard v. Am. Online Inc., 208 F.3d 741,

6  751 (9th Cir.2000);" Sanford v. Member Works, 625 F.3d 550, 559 (9th Cir. 2010).

7    A violation under section 1962(c) requires proof of: "1) conduct 2)
     of an enterprise 3) through a pattern 4) of racketeering activity."
8    Sedima S.P.R.L. v. Imrex Corp., 473 U.S. 479, 496, 105 S.Ct. 3275
     (1985) (internal note omitted). At issue is whether Plaintiffs
9    properly alleged a pattern of racketeering activity.

10  Howard, 208 F. 3d at 746.

11  "A pattern is defined as "'at least two acts of racketeering activity'" within ten years of each

12  other. 18 U.S.C. § 1961(5). Two acts are necessary, but not sufficient, for finding a violation.

13  See H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 238, 109 S.Ct. 2893, 106 L.Ed.2d 195

14  (1989). "[T]he term 'pattern' itself requires the showing of a relationship between the predicates

15  and of the threat of continuing activity.'" Id. at 239, 109 S.Ct. 2893." Howard at 746.

16    Assuming that plaintiff could show that these defendants were part of an

17  "enterprise," and engaged in criminal activity regarding the manner in which they enforced a

18  court order on two occasions (doubtful), plaintiffs have certainly not alleged predicate acts which

19  demonstrate any opportunity for criminal activity in the future.  The enforcement of the court

20  order affecting Schmidt and his family was related only to the underlying Texas case, a case long

21  since final.  Marshal Amador (retired) and Deputy Ashton by definition will have no further

22  contact with this case, nor do plaintiffs allege that these individuals utilized their "enterprise" for

23  a continuing course of criminal conduct in other cases.  The RICO claim is meritless and should

24

25    [8]An official capacity claim cannot be stated against federal defendants in their official
    capacity as such a claim would be against the federal entity itself. See  McNeily v. United States,
26  6 F.3d 343, 350 (5th Cir. 1993).

1  be dismissed.

2  *Conclusion*

3  These Findings and Recommendations, if adopted, will dismiss most of the claims

4  in this action, and bring order to the chaotic pleadings; for clarity the court repeats the previous

5  dismissals.

6  1. Defendant District Judge Buchmeyer, deceased, has been dismissed for all purposes (Docket #

7  46) and remains so;

8  2. The Receiver defendants Warfield, Crawford, Murphy and Atwood have been dismissed for all

9  purposes (judicial immunity)(Docket # 45) and remain so;

10  3. Defendants Ely, Fonda, and Norton have been dismissed for all purposes (lack of personal

11  jurisdiction) (Docket # 46) and remain so;

12  4. All federal constitutional claims against defendants Amador and Ashton were dismissed based

13  on the statute of limitations (Docket # 46), save for that of Jordyn Manzer, and remain dismissed;

14  5. Claims VI, VII (California constitutional claims only), VIII (California constitutional claims

15  only), Claim IX (California constitutional claims only), Claim X, Claim XI (California

16  constitutional claims only), Claim XII (Texas constitutional claims only), Claims XIII, XIV, XV,

17  XVI, XVII, XVIII, XIX, XXI, the state law claims (including claims base on state constitutions)

18  pending against defendants Amador and Ashton should be dismissed as being subject only to the

19  FTCA;

20  6. Claim I, the FTCA claim should be dismissed and permitted as follows:

21  a. No FTCA claims exist for any plaintiffs for Texas activities that pre-date the California

22  events, July 7, 2005 as no administrative claim was filed for the Texas events;

23  b. Jordyn Manzer's FTCA claim be dismissed as she never filed an FTCA claim, nor was

24  one filed on her behalf;

25  c. any FTCA claim that Lonnie Schmidt might have had with respect to his arrest on July

26  7, 2005 be dismissed as the administrative claim was not timely filed;

1    d. all FTCA claims of Connie Schmidt, Rebecca Schmidt and Daniel Schmidt be
2  dismissed as the complaint was not timely filed vis-a-vis these plaintiffs;
3    e. the California events claims of Don and Deborah Manzer, Eddie and Donna Maria be
4  permitted to continue, as would any claim maintained by Lonnie Schmidt which postdates July
5  10, 2005.
6  7. Claims II, IV, VII, VIII, IX, XI, XII, Jordyn Manzer's federal constitutional claims, should be
7  dismissed against defendants Amador and Ashton for failure to state a claim; these claims should
8  be entirely dismissed at this time;
9  8. Claim XX, the RICO Claim as to all defendants be dismissed as failing to state a claim;
10  9. Claim III, the 42 U.S.C. § 1983 claim be permitted to continue against the newly identified
11  state defendants, and service be ordered to be completed within 30 days.[9]
12    Accordingly, the undersigned recommends the above dismissals, and that only
13  parts of Claim I as addressed above, and Claim III may go forward.  The Complaint and the
14  Jordyn  Manzer Amended Complaint should be consolidated and proceed only as outlined above.
15   The United States should be ordered to answer that part of Claim I remaining.
16  /////
17  //////
18  //////
19  //////
20  //////
21  /////
22  /////
23  //////
24  //////
25
26  [9]These claims may well be barred by the statute of limitations, but as such is an affirmative defense, plaintiffs should be permitted to go forward.

17

1    These findings and recommendations are submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

3  fourteen (14) days after being served with these findings and recommendations, any party may

4  file written objections with the court and serve a copy on all parties.  Such a document should be

5  captioned "Objections to Magistrate Judge"s Findings and Recommendations."  Any reply to the

6  objections shall be served and filed within fourteen (14) days after service of the objections.  The

7  parties are advised that failure to file objections within the specified time may waive the right to

8  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9  DATED:   May 20, 2011

                            /s/ Gregory G. Hollows
10
                            _____
11                          GREGORY G. HOLLOWS
                            U. S. MAGISTRATE JUDGE
   GGH:076/schmidt.fr.wpd
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                    18