1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LONNIE G. SCHMIDT, et al.              No.  No.  2:09-cv-0660 LKK GGH PS

12           Plaintiffs,

13       v.                                 ORDER AND

14   UNITED STATES OF AMERICA,              FINDINGS AND RECOMMENDATIONS

15           Defendant.

16   _____

17          Previously pending on this court's law and motion calendar for August 1, 2013, were the

18   parties' cross-motions for summary judgment, filed April 25, 2013 by defendant and June 6, 2013

19   by plaintiffs.  The United States was represented by Earline Gordon.  Plaintiffs appeared in pro

20   se.  Having heard oral argument and reviewed the papers in support of and in opposition to the

21   motions, the court now issues the following findings and recommendations.

22   PROCEDURAL BACKGROUND

23          The initiation of the saga leading to this action involved the filing of lawsuits by the

24   Securities and Exchange Commission (SEC) in federal court in Texas against individuals not

25   plaintiffs herein.  Apparently, however, some of the plaintiffs herein were in possession of assets

26   subject to seizure by a court appointed receiver.  A lengthy history of conduct contemptuous of

27   the Texas federal court by Lonnie and Daniel Schmidt ensued, resulting in civil contempt arrest

28   orders being issued, and the actual incarceration of Lonnie Schmidt for a substantial period of

                                              1

1   time.  It also appears that plaintiff Daniel Schmidt was a longtime fugitive on an outstanding

2   arrest order issued by the Texas federal judge.  The receiver appointed in the Texas actions

3   sought to seize assets of the plaintiffs in order to comply with his appointing authority orders.

4   The remaining plaintiffs allege that they were "victims" of the enforcement of the federal court

5   orders and the appointed receiver's orders.

6       A lengthy findings and recommendations setting forth the procedural history of this case

7   was issued on May 20, 2011.  (ECF No. 63.)  Numerous claims were dismissed at that time, and

8   as a result many of the parties were eliminated from the action.  Further findings and

9   recommendations were issued on January 27, 2012, which disposed of Claim III and certain state

10  defendants.  (ECF No. 70.)  Both findings and recommendations were adopted by the district

11  court.  (ECF Nos. 65, 71.)

12      The sole remaining claim at this stage of the litigation is Claim I, which is a Federal Tort

13  Claims Act (FTCA) claim for "malicious prosecution; malicious abuse of legal process; abuse of

14  process; assault; battery; false arrest; false imprisonment; kidnapping; grand theft; denial of

15  counsel; denial of speedy trial; interference with civil rights; intentional infliction of emotional

16  distress; and common law conspiracy."  (Compl., ¶ 74.)  The actions underlying the alleged torts

17  were those of federal law enforcement officials who effectuated the Texas court arrest order.

18  The United States is the sole remaining defendant, and the only plaintiffs remaining are Lonnie

19  Schmidt, but only for California activities postdating July 10, 2005; and Don and Deborah

20  Manzer, and Eddie and Donna Maria, but only for events in California occurring July 7, 2005 or

21  later.

22  DISCUSSION[1]

23  I.  Legal Standard

24      The "purpose of summary judgment is to pierce the pleadings and to assess the proof in

---

[1] At the hearing, plaintiff Lonnie Schmidt made an informal request for the undersigned to recuse
himself from the case.  Plaintiff is advised that remarks made during the course of a judicial
proceeding that are critical or hostile to a party or his case ordinarily will not support a bias or
partiality claim unless they reveal an extrajudicial source for the opinion, or "such a high degree
of favoritism or antagonism as to make fair judgment impossible."  Liteky v. United States, 510
U.S. 540, 114 S. Ct. 1147, 1157 (1994.)

1    order to see whether there is a genuine need for trial."  Matsushita Elec. Indus. Co. v. Zenith

2    Radio Corp., 475 U.S. 574, 587 (1986).  Summary judgment is appropriate when it is

3    demonstrated that there exists "no genuine dispute as to any material fact and that the movant is

4    entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment

5    practice, the moving party

6           always bears the initial responsibility of informing the district court of the basis for
          its motion, and identifying those portions of "the pleadings, depositions, answers
7           to interrogatories, and admissions on file, together with the affidavits, if any,"
          which it believes demonstrate the absence of a genuine issue of material fact.
8

9    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

10          If the moving party meets its initial responsibility, the burden then shifts to the opposing

11   party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita,

12   475 U.S. at 585-86.  In attempting to establish the existence of this factual dispute, the opposing

13   party may not rely upon the allegations or denials of its pleadings but is required to tender

14   evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

15   support of its contention that the dispute exists.  See Matsushita, 475 U.S. at 586.  The opposing

16   party must demonstrate that the fact in contention is material, i.e., a fact that might affect the

17   outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

18   248 (1986); T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

19   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

20   a verdict for the nonmoving party, see Anderson, 477 U.S. at 248.

21          In the endeavor to establish the existence of a factual dispute, the non-moving party need

22   not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed

23   factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

24   truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  The evidence of the non-moving party is to be

25   believed and all justifiable inferences are to be drawn in its favor.  See Anderson, 477 U.S. at 255.

26   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

27   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

28   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

1   To demonstrate a genuine issue, the opposing party "must do more than simply show that there is

2   some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could

3   not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

4   Matsushita, 475 U.S. at 586-87 (internal citation and quotation omitted).

5   II.  Claims Remaining

6          The court must once again struggle with describing the claims which remain for analysis

7   herein.  The entire action has suffered from "kitchen sink" syndrome where plaintiffs have thrown

8   into their prolix complaint nearly every type of claim known to the law whether or not justified.

9          As previously set forth, the only claim remaining, after the findings and recommendations

10   were adopted, is Claim I brought under the FTCA.  It is limited to events taking place in

11   California only, and for plaintiff Lonnie Schmidt, it is limited to events postdating July 10, 2005.

12   For plaintiffs Don and Deborah Manzer, and Eddie and Donna Maria, it is confined to events

13   taking place on July 7, 2005 or later.  The only defendant remaining is the United States, based on

14   alleged activities of former U.S. Marshal Amador and Deputy Ashton.

15          The various bases for the FTCA claim which are going forward, and will be analyzed in

16   this opinion, include:[2]

17   Abuse of Process[3] – all remaining plaintiffs (Compl.  ¶ 102)

18   Assault and Battery – all remaining plaintiffs (Compl.  ¶ 74)

19   False Arrest and false imprisonment - Edward Maria, Donna Maria (Compl. ¶¶ 98-100)

20   Grand Theft – all remaining plaintiffs (seizure of property pursuant to court order of receivership)

21   (Compl.  ¶ 74)

22   Denial of Counsel and denial of speedy trial – Lonnie Schmidt (events from 7/10/05-12/19/05)

23   against all defendants (Compl.  ¶¶ 108-118)

24   _____

25   [2]   Bases for the FTCA claim which have been resolved prior to these cross-motions and will not
be discussed include: malicious prosecution (Compl.  ¶ 74, against dismissed receiver defendants

26   only); false arrest and false imprisonment by Lonnie Schmidt (dismissed by findings and
recommendations); kidnapping by Lonnie Schmidt (dismissed by findings and recommendations

27   as events occurring on July 7, 2005 were not timely exhausted by this plaintiff).
[3]   "Malicious abuse of legal process," as set forth in ¶ 74 of the complaint, is not a basis for relief

28   separate from abuse of process.

1  Intentional Infliction of Emotional Distress – all remaining plaintiffs (Compl. ¶ 74, 142-44)

2  Common law conspiracy – all remaining plaintiffs (to wrongfully arrest and imprison L. Schmidt

3  and other plaintiffs and seize their property) (Compl. ¶¶ 74, 87)

4  Interference with Civil Rights – all remaining plaintiffs (Compl.  ¶ 74)

5         Other claims which were not set forth under the FTCA claim, but were described as

6  separate claims in the complaint, were previously dismissed and found to be *potentially* subject

7  only to the FTCA insofar as they encompassed state law tort claims.  (Doc. No. 63 at 16.)  They

8  were unlawful search and seizure (California constitutional claims only), trespass to assault and

9  battery (California constitutional claims only), interference with contractual relations, libel and

10 slander, deprivation of due process (California constitutional claims only), nuisance, negligent

11 infliction of emotional distress, conversion, and constructive trust.  However, since these claims

12 were not specifically enumerated under Count I of the complaint, the FTCA claim, and because

13 the claims are either repetitive of those in Claim 1 or otherwise defective,[4] they will not be

14 addressed here.  Plaintiffs are masters of their complaint and repeated, or did not enumerate, these

15 separately stated torts under the FTCA claim.  Given the prolixity of the complaint as a whole, the

16 undersigned will not add to the already multi-faceted FTCA claim.

17 III.  Defendant's Motion for Summary Judgment

18         A.  Defendant's Request for Judicial Notice

19         Defendant has filed a request for judicial notice of pleadings and orders filed in other

20 courts.  Plaintiffs have not opposed the request.  Defendant's request for judicial notice is granted

21 pursuant to Fed. R. Evid. 201, as it does not require the acceptance of facts "subject to reasonable

22 dispute" and is capable of immediate and accurate determination by resort to a source whose

23 accuracy cannot reasonably be questioned.  See In re Tyrone F. Conner Corp., Inc., 140 B.R. 771,

24 781-82 (E.D. Cal. 1992); Fed. R. Evid. 201(b); Cal. ex. rel. RoNo, L.L.C. v. Altus Fin. S.A., 344

25 F.3d 920, 931 n. 8 (9th Cir. 2003).  The court also takes notice of its own records in this action.

26

27 _____

[4] For example, as previously ruled, claims of state constitution violations are not cognizable under
the FTCA; however, the facts underlying such claims may also be potentially cognizable state law
28 statutory or common law torts as well.

1   United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) (a court may take judicial notice of its

2   own records).

3        B.   Compliance with Federal Tort Claims Act Requirements

4        The claims to be addressed here from Count 1 fall under the FTCA, which is the

5   exclusive remedy for various state law claims against actions by law enforcement officers of the

6   U.S. government, including assault, battery, false imprisonment, false arrest, abuse of process,

7   and malicious prosecution.  28 U.S.C. §§ 2679(b)(1); 2680(h).[5]  Claims for libel, slander,

8   misrepresentation, deceit, and interference with contract rights are excluded from the FTCA.  Id.,

9   § 2680(h); Moore v. United Kingdom, 384 F.3d 1079, 1088 (9th Cir. 2004) (recognizing that such

10  claims are barred by statute).

11       This court previously stated in its May 20, 2011 opinion on the subject:

12      As such, a Federal Tort Claims Act (FTCA) becomes the exclusive legal method
by which the individual defendants or the United States may be sued.  28 U.S.C. §

13  2679(b)(1).  This is so even if, ultimately, no viable action under the FTCA exists.
United States v. Smith, 499 U.S. 160, 165, 111 S.Ct. 1180, 1184-85 (1991).  Only

14  two statutory exceptions to the above law regarding individual immunity exist:
claims based on the federal Constitution, and claims based on federal statutes.

15  Section 2679(b)(2).  All monetary damages claims based on state law against
individual federal government employees are barred, §2679(b)(1), including

16  claims based on a state constitution.  Salafia v. United States, 578 F.Supp. 2d 435,
442 (D. Conn. 2008); McCabe v. Macaulay, 450 F.Supp. 2d 928, 939-940 (N.D.

17  Iowa 2006); Chin v. Wilhelm, 291 F. Supp.2d 400, 405 (D.Md. 2003).

18

19      Therefore, all state law claims pursued against Amador and Ashton in either
complaint must be dismissed, and incorporated, if at all, into an FTCA claim

20  (Claim I) against the United States.

21  Findings and Recommendations, filed May 20, 2011.  (ECF No. 63 at 8.)

22  Claims that are exceptions to the FTCA's waiver of sovereign immunity cause the court to be

23  deprived of subject matter jurisdiction to hear them.  Mundy v. United States, 983 F.2d 950, 952

24  

25  [5] The United States can only act through its federal personnel; therefore, the FTCA has carved out
various exceptions to the FTCA, and exceptions to the exceptions, based upon the acts of the

26  underlying personnel involved.  Plaintiffs are mistaken as to the scope of the FTCA if they

27  believe that certain actions performed by certain personnel, cognizable under the FTCA, open up
the United States to any and all sorts of tort claims involving dismissed defendants or unrelated

28  personnel.

1   (9th Cir. 1993).  The FTCA waives the sovereign immunity of the United States for actions in

2   tort.  The FTCA also provides that before an individual can file an action against the United

3   States in district court, the individual must seek an administrative resolution of the claim. 28

4   U.S.C. § 2675(a) provides, in relevant part,

5

6       An action shall not be instituted upon a claim against the United States for money
        damages for injury or loss of property or personal injury or death caused by the

7       negligence or wrongful act or omission of any employee of the Government while
        acting within the scope of his office or employment, unless the claimant shall have

8       first presented the claim to the appropriate Federal agency and his claim shall have
        been finally denied by the agency in writing and sent by certified or registered

9       mail.

10          Here, plaintiffs submitted timely administrative tort claims for only some of their Claim

11   One assertions before bringing this action.  (ECF No. 44, Exhibits.)  As the undersigned

12   previously analyzed in the May 20, 2011 findings and recommendations, some of the claims were

13   barred because they were untimely; the non-barred claims were submitted only to the United

14   States Marshal Service; the claims were related only to the activities in California to carry out the

15   contempt order starting July 7, 2005.

16          The requirements for presentment are "(1) a written statement sufficiently describing the

17   injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim."

18   Blair v. IRS, 304 F.3d 861, 865 (9th Cir. 2002), quoting Warren v. United States Dep't. of

19   Interior Bureau of Land Mgmt., 724 F.2d 776, 780 (9thCir. 1984).  These are the only two

20   requirements that are jurisdictional.  Kinlichee v. United States, 2013 WL 943042, *9 (D. Ariz.

21   Mar. 11, 2013).

22          The letter presented by Lonnie Schmidt makes a claim for assault, battery, false arrest and

23   false imprisonment, and abuse of process.  (ECF No. 44 at 41, 46-50.)  The letter submitted by

24   Eddie and Donna Maria sets forth claims for false imprisonment, abuse of process, assault, and

25   unlawful search and seizure.[6]  They also make claims of  unconstitutional violations against their

26   _____

27   [6]   Claim I, the FTCA claim, contains no claim of unlawful search and seizure.  Furthermore,
     although the Marias also raised claims of criminal trespass and assault in their original

28   presentment to the government, there is no claim for trespass in the complaint under the FTCA
     claim.  See Compl. ¶ 74.

7

1    father, Lonnie Schmidt, the unlawful pursuit of their brother, Daniel Schmidt, and an unnamed

2    violation of the Maria's civil rights under 42 U.S.C. § 1983.  (Id. at 34-35, 38-39.)  The letters

3    from Don and Deborah Manzer claimed false arrest and false imprisonment, abuse of process,

4    unconstitutional search and seizure, as well as other unconstitutional violations against their

5    father, Lonnie Schmidt, the unlawful pursuit of their brother, Daniel Schmidt, violations against

6    the Marias, and an unnamed violation of the Manzer's civil rights under 42 U.S.C. § 1983.  (Id. at

7    27-28, 31-32.)  Plaintiffs did not exhaust each and every state law claim that they now raise in

8    this action such that the government could be on notice of what it needed to investigate.  The

9    government had no notice of the potential claims of intentional infliction of emotional distress,

10   common law conspiracy, interference with civil rights, grand theft, denial of counsel, and denial

11   of speedy trial rights.  In any event, all of these claims are not explicitly permitted against the

12   United States based on the actions of law enforcement officers under § 2680(h).

13          Therefore, the claims which are exhausted and which have not been dismissed, are false

14   arrest, false imprisonment, and assault by Edward and Donna Maria only;[7] and abuse of process

15   by Lonnie Schmidt, Don and Deborah Manzer, and Edward and Donna Maria.  These claims will

16   be addressed in this opinion.  Other remaining claims either have not been exhausted, were

17   previously dismissed, or are claims for which the party seeking redress has no standing to claim

18   violations allegedly incurred by other plaintiffs.

19          C.  False Arrest and False Imprisonment

20          *Facts*

21          These claims are made by Lonnie Schmidt and Edward and Donna Maria.  As to the

22   Marias, the undisputed facts are that the U.S. Marshals arrived at the Maria house in the morning

23   of July 7, 2005 in order to take Lonnie Schmidt into custody pursuant to Judge Buchmeyer's

24   January 23, 2003 contempt order to remand him into custody.  (SUF nos. 24, 27, Donna Maria

25   Dep., Ex. 3 at 9-10.)

26   ─────────────────────
     [7]  The Manzers testified that they are not claiming false arrest or imprisonment, (ECF. No. 98-1
27   at 156, 179), and conceded at hearing that they were not present at the standoff.  Lonnie
     Schmidt's claim concerning any violations surrounding his arrest at the Maria's home on July 7,
28   2005 was previously dismissed in the findings and recommendations.  (ECF No. 63 at 16.)

                                                    8

Judge Buchmeyer's order, issued January 23, 2003, provided:

ORDER FINDING LONNIE GLENN SCHMIDT IN CONTEMPT OF COURT

AND DIRECTING THE UNITED STATES MARSHAL TO TAKE INTO

CUSTODY AND DETAIN LONNIE GLENN SCHMIDT UNTIL FURTHER

ORDER OF THIS COURT

*******

[after setting forth evidence of contempt]

> NOW, THEREFORE, IT IS ORDERED that Lonnie Glenn Schmidt shall be remanded into the custody of the United States Marshal and taken to the detainment facility located nearest to the Dallas Division of the United States District Court for the Northern District of Texas and there remain incarcerated until such time as he turns over to the Receiver the sum of $282,405 as required by the Order Re: Petition No. 14 or otherwise provides evidence of the disposition of such funds and insufficient assets to comply with Order Re: Petition No. 14.

(ECF NO. 100-1 at 79-80.)  This order was based on information from the Receiver's investigation indicating that the relief defendant, International Education Research Corporation, had transferred investor funds of at least $282,405 to Lonnie Schmidt, which he refused to turn over to the Receiver.  (Id.)  According to the complaint, Lonnie Schmidt filed a petition to reconsider this order.  (Compl. ¶ 27.)  The complaint further alleges that Receiver Warfield named Schmidt in an ancillary collection action; however, service was never effectuated.  (Id. at ¶ 31.)

As Donna Maria specifically recounted, there was a knock at the door at 6:30 a.m.  When Mrs. Maria looked through the peephole, a gentleman in a Hawaiian shirt was standing there and stated, "This is Officer or Marshall" – "I'm with the U.S. Marshals, Timothy Ashton, and I'm here to arrest your father.  Can you please open the door?"  (Id. at 8-9.)  She and her family called 911, but she could hear officers continually knocking and when they received the call from the dispatcher, they were laughing, saying "they're calling 911 and we're already here.  Open your door."  (Id. at 9.)  Donna Maria refused, demanding either an arrest or search warrant for her father. (Id. )  The officers showed her a copy of Judge Buchmeyer's order through the window but she continued to refuse them entrance.  Id.  She testified that "[t]here were multiple guns

pointed at me through the window as they were holding it up." (Id. at 10.)  She also testified that

they kept ringing the doorbell and hitting the door with the end of their flashlight, causing

damage. (Id. at 11.)  They also shut off the water supply to the house.  (Id.)  Donna Maria is not

sure who made these threats, but some of the officers stated that they were calling CPS (Child

Protective Services) because the Marias were harboring a fugitive, and that her daughter would be

taken away from her.  Donna Maria testified that she was terrified.  (Id. at 11-12.)  The law

enforcement officers who were on the scene, including local police, who numbered 25 to 30,

stayed in the area but pulled back off the property for a time and spoke with the Maria's

neighbors.  They remained in the Maria's driveway for a portion of the six hour period.  (SUF no.

29, Ex. 3 at 13-14, 16.)

Although the need for a warrant in addition to the district judge "remand order" is a legal

issue subject to dispute, the Marshals nevertheless sought a warrant from Magistrate Judge Beck

in Fresno.  After a search warrant was issued, ostensibly to search for the person of Lonnie

Schmidt, they returned in the afternoon with a search warrant so that they could enter the house in

order to seize Lonnie Schmidt.  Lonnie Schmidt came out of the house voluntarily and was placed

under arrest.  (SUF no. 30, Ex. 3 at 16-19.)   Donna Maria testified that when the officers returned

with the warrant, she saw four to six guns pointed at her through the front window.  (Ex. 3 at 16.)

According to the deposition of Edward Maria, no law enforcement personnel told him he

was not free to leave the house, but his family assumed that if they did leave, the officers could

enter the home without any warrant, so they stayed in order to protect their property.  (Ex. 2 at

18-19.)  After he left the house with his one year old daughter during this time period, at around

noon, he was pulled over by a federal marshal and detained for twenty to thirty minutes.  (Id. at

9.)  The officer asked him for his driver's license and to open his trunk.  He was informed at that

time that he was not allowed to go back to his house, and if he did, he would be arrested.  (Id.)

The Affidavit of Timothy Ashton, presented to Judge Beck, recounted in part:

2. I request a search warrant to allow entry into premises in order to execute a
civil warrant of arrest for contempt of court issued out of the Northern District of
Texas by the Honorable Jerry Buchmeyer.  The premises to be entered and

1    searched do not belong to the person named in the civil warrant for arrest.
3.  Person sought in the civil warrant of arrest for contempt:  Lonnie Glenn
2    SCHMIDT.

3    …
7.  Based on the above information, I have probable cause to believe that
4    SCHMIDT is located within the residence of 2737 Goshen Ave., Clovis CA.

5    (ECF 109-4 at 97-99.)

6                Within the affidavit, Ashton set forth all the facts and evidence supporting his

7    belief that Schmidt was inside the Maria house at the time, including his conversations with two

8    neighbors putting Lonnie Schmidt at the house, and identification of registration of the car parked

9    in the driveway as belonging to the Marias.  (Id.)   The affidavit explained that Ashton had

10    previously made contact with Donna Maria and asked to speak with her father, but she refused to

11    open the door.  When Ashton explained that the U.S. Marshals had a warrant for Schmidt for

12    contempt of court, she responded that it "was not valid and she does not recognize the authority

13    of the U.S. Marshals or the Court of the Northern District of Texas."  (Id. at 98.)  The search

14    warrant was issued on July 7, 2005, to search the Maria's house in order to seize Lonnie Schmidt.

15    (Id. at 101.)

16        *Discussion*

17                Plaintiffs expressed some confusion with respect to FTCA law with the assertion at

18    hearing that in Claim 1 "they were suing the United States, not the individual law enforcement

19    officers."  While it is true that the United States is the sole defendant in an FTCA claim, that

20    liability (as it remains) stems from the underlying actions of federal law enforcement officers.

21    And although FTCA liability is determined the same as for a private individual, it is an individual

22    under *like circumstances*. 28 U.S.C. sections 1346(b), 2674.  Thus, the undersigned initially looks

23    to state law as that law would apply to the actions of state *law enforcement officials*.  Tekle v.

24    United States, 511 F.3d 839, 851-853 (9th Cir. 2007) and cases cited therein.  In addition, if

25    federal law (both legislative and judicially authorized) would otherwise give its employee an

26    immunity or defense, that immunity or defense is applicable in the FTCA action.  28 U.S.C.

27    section 2674 (third paragraph).  To use a simple example of this latter point, if state law did not

28    recognize absolute judicial immunity, the United States could not be liable for the in-court action

1   of a federal judge, because judicially created federal law does recognize such an immunity.

2   Looking first to California law:

> Under California law, false arrest is not a separate tort, but a subcategory of false
3   imprisonment.  The elements of the tort of false imprisonment are: "(1) the
> nonconsensual, intentional confinement of a person, (2) without lawful privilege,
4   and (3) for an appreciable period of time, however brief."  Officers may detain the
> occupants of a premise while conducting a lawful search pursuant to a warrant, so
5   long as they do not violate the Fourth Amendment's prohibition on unreasonable
> searches and seizures.

6

7

8   P.A. on behalf of ELA v. United States, 2013 WL 3864452, *7 (N.D. Cal. Jul. 24, 2013) (internal

9   citations omitted).  See also Moore v. City & County of San Francisco, 5 Cal.App.3d 728, 85

10  Cal.Rptr. 281, 284 (1970) ("False arrest is merely one way of committing a false imprisonment....

11  False arrest and false imprisonment are not separate torts.").

12          In order to prevail on such a claim, plaintiffs would have to show the lack of a lawful

13  privilege, or that the search warrant was illegal or illegally executed.  Garcia v. City of Merced,

14  637 F.Supp.2d 731, 752 (E.D. Cal. 2008) (discussing California law).  "Under Cal. Code Civ.

15  Proc. § 262.1, an officer who executes process which is regular on its face is immune from

16  liability.  In addition, under Cal. Civ. Code § 43.55, a peace officer cannot be liable on account of

17  an arrest made pursuant to a facially regular warrant so long as the officer 'acts without malice.'"

18  Martin v. County of San Diego, 650 F.Supp.2d 1094, 1106 (S.D. Cal. 2009) (claim of false

19  arrest/imprisonment under 42 U.S.C. § 1983).

20          Plaintiffs argue that Ashton's affidavit was false because it stated that there was an arrest

21  "warrant" for Lonnie Schmidt when in fact there was an order for his arrest.  The exact

22  terminology used by Ashton in his affidavit was "civil warrant of arrest for contempt of court

23  issued out of the Northern District of Texas by the Honorable Jerry Buchmeyer."  (ECF No. 109-

24  4 at 97.)  Defendant cites Black's Law Dictionary which defines "bench warrant" as process

25  issued by the court in the case of contempt, among other scenarios.  Plaintiffs' argument is

26  erroneous for several reasons: (a) the Fed. R. Civ. P. 4.1(b)  warrant was all that was needed to

27  effectuate Lonnie Schmidt's arrest;  the search warrant sought after plaintiffs refused entry when

28

12

1    shown the Rule 4.1 warrant was not necessary (or even authorized under Fed. R. Crim. Pro. 41),

2    but the surplus nature of this warrant has no material effect in this case; (b) even if the search

3    warrant was necessary, the affidavit was not false because there was a "warrant" for Schmidt's

4    arrest pursuant to Rule 4.1).[8]

5            Plaintiff's underlying, but erroneous, predicate point is that because no Fed. R. Crim. P.

6    41 arrest warrant was  issued, the Marshals had no authority to effectuate the arrest of Lonnie

7    Schmidt, and hence, detain him (as well as the other plaintiffs).[9]  The point is, however, that the

8    Fed. R. Civ. P Rule 4.1 order *was* the necessary arrest warrant.  The contempt order of Judge

9    Buchmeyer constituted a valid warrant pursuant to Fed. R. Civ. P. 4.1(b) which provides that

10   "[a]n order committing a person for civil contempt of a decree or injunction issued to enforce

11   federal law may be served *and enforced* in any district."  (emphasis added).[10]  First of all, the

12   contempt order issued by Judge Buchmeyer was not a criminal contempt order—it was civil—and

13   the civil, not criminal, rules apply.  Secondly, there is no reason why the enforcement provision

14   of civil Rule 4.1 is not equal in stature to that of criminal Rule 41.  Federal Rules constitute laws

15   of the United States, United States v. Petri, __F.3d__, 2013 WL 1490604 *4 (9th Cir. 2013)

16   (citing United States v. Marion, 404 U.S. 307, 319 (1971) (criminal rules) and Beech Aircraft

17   Corp. v. Rainey, 488 U.S. 153, 163 (1988) (civil rules)), and civil Rule 4.1 is every bit the law in

18   the civil arena as is Rule 41 in the criminal context.

19           Such was the situation in S.E.C. v. Bilzerian, 131 F.Supp.2d 10, (D.D.C. 2001), a case

20   with factual similarities with the case at bar.  In Bilzerian, a bankruptcy debtor had been ordered

21   to account for his assets.  Bilzerian ignored the order and finally, the court held: the court has

22

23   [8] It may be as well that a search warrant to look for the person of Lonnie Schmidt was not
     authorized under Fed. R. Crim. 41 as that Rule authorizes for the search of evidence for criminal
     prosecutions.  In this case Lonnie Schmidt had not been charged with a crime; his arrest was
24   authorized under civil contempt.  But again, this is a no harm-no foul situation as the search
     warrant was not necessary in the first place.
25   [9] Again, Lonnie Schmidt has no ability to challenge the events which took place on July 7 in that
     his administrative complaint was untimely for that day.
26
     [10] Plaintiff's reference to another judge issuing a contempt order against another person which
27   was accompanied by a Rule 41 arrest warrant does not conclusively prove that a criminal arrest
     warrant was necessary—it merely demonstrates that the procedures surrounding the civil
28   contempt rule, 4.1, are not well known, and seldom find their way into published opinions.

1    "inherent power to take whatever steps necessary to ensure those persons within its power comply

2    with its orders."  Id. at 15 (citation omitted).  An order was issued (attached to the opinion)

3    pursuant to Fed. R. Civ. P. 4.1which commanded the arrest of Bilzerian until he complied with

4    the accounting order.  No Fed. R. Crim. P. 41 arrest warrant was referenced.  The specific terms

5    of the court's order included the provision permitting the U.S. Marshal to take defendant into

6    custody if he did not appear voluntarily on a specified date and time, "and to effectuate the arrest,

7    may enter his residence at [his address] and use such force as deemed necessary."  Id. at 18.

8    Thus, the law enforcement officers in this case, as in Bilzerian, had all the warrant they needed

9    with Judge Buchmeyer's order making the Rule 41 search warrant or arrest warrant superfluous.

10           The fact that Judge Buchmeyer did not use the same language as the judge in Bilzerian to

11   direct the U.S. Marshal to take Lonnie Schmidt into custody, and specify the manner in which it

12   should be effectuated, is of no consequence.  There are no magic words required to issue a Rule

13   4.1 arrest order.  Rule 4.1(b) permitted the order to be enforced in the manner in which it was.

14   Although Lonnie Schmidt's claims for false arrest and imprisonment were previously dismissed

15   by this court, the same claims by the Marias lack merit for the same reasons just discussed.  The

16   U.S. Marshals had every right to go into the Maria's residence to arrest Lonnie Schmidt pursuant

17   to Judge Buchmeyer's order, without an additional search or arrest warrant, because Rule 4.1(b)

18   provided them with the authority to compel compliance with the judge's contempt order.   It was

19   only out of an abundance of caution that the Marshals sought a search warrant after plaintiffs

20   refused to comply with the order.  In fact, plaintiffs brought the six hour delay upon themselves

21   by demanding a separate warrant.

22           Plaintiffs' second main point is their contention that the effectuating Marshals should have

23   realized that the Rule 4.1 order was issued patently without authority.  This contention is made in

24   order to "de-immunize" the Marshals under California law for having served a facially unlawful

25   order/warrant.[11]   Plaintiffs grossly overstate the law in this respect.  A law enforcement officer is

26   ────────────────

27   [11] Even if California law did not immunize the law enforcement officials in this respect, federal
     law would do so.  Officers of the court enjoy quasi-judicial absolute immunity. In re Castillo, 297
     F.3d 949, 948 (9th Cir. 2002);  Coverdell v. Dept. of Social etc, 834 F.2d 758, 764-65 (9th Cir.
28   1987).  There are many cases applying this federal immunity to law enforcement carrying out an

1    entitled to presume the regularity of a court order, except where it is procured by intentional

2    misrepresentation of *material* facts, where a warrant lacks probable cause for its issuance on the

3    face of the affidavit, or where it is required to be executed in such a fashion that no reasonable

4    law enforcement officer would believe such execution to be lawful or constitutional.  Sections

5    262.1, 43.55, <u>Martin</u>, <u>supra</u>; <u>see also</u> Cal. Govt. Code 821.6.  The immunity is not overcome by

6    pointing to vagaries in the law, or a lack of encyclopedic knowledge of a case, or here, by

7    requiring the law enforcement officers to determine the legality of the underlying order—thereby

8    overruling the issuing judge.  Indeed, where the serving law enforcement officials were not the

9    officials procuring the warrant/order, it would require the most patent defects in the warrant/order

10   to hold the serving (executing) officials liable (and in this FTCA action, the United States).

11       A detention is privileged if it is legally authorized, as when it is made pursuant to lawful

12   process, such as a valid warrant.  <u>See Muller v. Reagh</u>, 215 Cal.App.2d 831, 836-837, 30

13   Cal.Rptr. 633 (1963), citing 2 Witkin, Cal. Procedure, Pleading, § 383, pp. 1360-1361, fn.

14   omitted [unlawful arrest is not privileged]; <u>Garcia v. City of Merced</u>, 2008 WL 115201 (E.D. Cal

15   2008).  In such cases, the imprisonment is not "false" even if the proceedings are groundless and

16   the warrant is procured for an improper purpose.  <u>Collins v. City and County of San Francisco</u>,

17   50 Cal.App.3d 671, 677, 123 Cal.Rptr. 525 (1975).  Thus, when the confinement is legally

18   authorized under valid process, no false imprisonment has occurred, and those alleged to have

19   caused it may be held liable only for malicious prosecution. <u>Id</u>. at 676-677.

20       Process is facially valid if it proceeds from a court having jurisdiction of the subject

21   matter and contains nothing that ought reasonably to apprise the officer it was issued without

22   authority.  <u>Muller</u>, 215 Cal.App.2d at 837-838; <u>Vallindras v. Massachusetts etc. Ins. Co.</u>, 42

23   ────────────────────────────────────────────

24   order or directive of the court.  <u>See</u> e.g., <u>Kermit Const Corp. v. Banco Credito y Ahorro Ponceno</u>,
     547 F.2d 1,3 (1st Cir. 1976): it is particularly important to extend quasi-judical immunity to a
     judge's subordinates who have acted pursuant to a judge's explicit direction because otherwise

25   these subordinates would become a " lightening rod for harassing litigation aimed at judicial
     orders."  That statement may have been written for this case.  This is not to say that the order may

26   be effectuated in an unconstitutional manner, i.e., excessive force, <u>see</u> <u>Richman v. Sheahan</u>, 270

27   F.2d 430, 433-34 (7th Cir. 2001); <u>Martin v. Bd. Of County Comm'rs</u>, 909 F.2d 402, 405 (10th
     Cir. 1990), however, merely carrying out the judge's order does entitle the law enforcement

28   personnel (and hence the United States here) to quasi-judicial immunity.

                                        15

Cal.2d 149, 155, 265 P.2d 907 (1954):

> "when we speak of process 'valid on its face,' in considering whether it is
> sufficient to protect an officer, we do not mean that its validity is to be determined
> upon the basis of scrutiny by a trained legal mind; nor is it to be judged in the light
> of facts outside its provisions which the officer may know.[Citations]  Unless there
> is a clear absence of jurisdiction on the part of the court or magistrate issuing the
> process, it is sufficient if upon its face it appears to be valid in the judgment of an
> ordinarily intelligent and informed layman.

See also Lopez v. City of Oxnard, 207 Cal.App.3d 1, 8, 254 Cal.Rptr. 556 :"Peace officers must execute all process and orders which are apparently regular on their face and issued by competent authority, even if there were defects in the proceedings upon which they were issued"]; see also Civ.Code, § 43.55, subd. (b) [for purposes of arresting officer immunity, defining "warrant of arrest regular upon its face" to include paper arrest warrants issued by judicial order and judicial orders "entered into an automated warrant system by law enforcement or court personnel."

Plaintiffs insist that the Marshals should have realized that Judge Buchmeyer lacked authority to issue the Rule 4.1 order because the order was not issued to enforce federal law.  The undersigned finds as a matter of law that the California Marshals enforcing the order had no duty to determine whether Judge Buchmeyer was correct in this respect.

Moreover, this issue has been conclusively decided adversely to plaintiffs in Texas.  The district court in Texas ruled, after Lonnie Schmidt was arrested by the U.S. Marshals pursuant to Judge Buchmeyer's order, that his arrest, having been pursuant to an order holding him in contempt and remanding him into custody until he either produced certain assets or proved inability to do so, and because the underlying action pertained to violations of federal securities laws, the contempt order in his case was issued to "enforce the laws of the United States" and could be enforced in any district pursuant to Rule 4.1(b).  Schmidt v. Joslin, No. 3-06-CV-0731, 2006 WL 1499773, *2 (N.D. Tex. May 31, 2006).

The Rule 4.1(b) order of arrest  (warrant) and the search warrant, although unnecessary, were more than adequate to detain the Marias until such time as Lonnie Schmidt was arrested.

16

1  The occupants of the Maria house, after all, refused entry to the Marshals so that they could

2  effectuate Schmidt's arrest pursuant to Judge Buchmeyer's order.  The undersigned knows of no

3  California or federal law which would compel law enforcement in such a situation to simply "go

4  away."

5          Moreover, after the procurement of the search warrant, the existence of the warrant

6  provides an objective justification for the detention of occupants at the premises subject to search

7  and is proper under the Fourth Amendment.  Michigan v. Summers, 452 U.S. 692, 702-03, 101 S.

8  Ct. 2587, 2594 (1981).  An agent's authority to detain the occupants of a house subject to a search

9  warrant is categorical and "does not depend on the quantum of proof justifying detention or the

10  extent of the intrusion to be imposed by the seizure." Muehler v. Mena, 544 U.S. 93, 98 (2005);

11  Dawson v. City of Seattle, 435 F.3d 1054, 1066 (9th Cir. 2006).  Because detention of a

12  building's occupants is "coextensive with the period of the search" and "require[s] no further

13  justification," detention of the Marias for the duration of the search by the Marshals did not

14  violate their rights.  Dawson, 435 F.3d at 1066.  Furthermore, [i]nherent in Summers'

15  authorization to detain an occupant of the place to be searched is the authority to use reasonable

16  force to effectuate the detention." Muehler, 544 U.S. at 98-99.  In fact, because Lonnie Schmidt

17  finally exited the house voluntarily, the Marshals were not required to enter it or use any force to

18  detain the Marias.

19          The search warrant, although superfluous, itself was facially valid, as described above.

20  The Ashton affidavit sets forth evidence supporting the officer's belief that Lonnie Schmidt was

21  in the Maria house, providing the indicia of probable cause, and it particularized the area to be

22  searched, the Maria's house.  It was entirely reasonable for the judge issuing the warrant to rely

23  on the affidavit.

24          To the extent a perimeter was set up at the end of the Maria's driveway during the time

25  that Ashton was obtaining the warrant, such actions are considered valid and reasonable to

26  prevent escape.  See Richardson v. City of Antioch, 722 F.Supp.2d 1133, 1143 (N.D. Cal. 2010).

27          The search and seizure was executed based on a lawful order by Judge Buchmeyer, and

28  upon an accurate affidavit and search warrant, as described above.  The law enforcement officials,

1  and hence the United States, are immune from plaintiff's claims that they were detained without

2  lawful process authorizing such.

3      D.  Assault

4      This claim pertains to Edward and Donna Maria only, as Lonnie Schmidt was previously

5  limited to claims after July 10, 2005, and the alleged assault took place at the Maria house on July

6  7, 2005.  Defendant contends that Lonnie Schmidt is the only plaintiff who raised this claim,

7  citing to the separate claim for "trespass for assault and battery" in the complaint pertaining to

8  this plaintiff only.  (Compl.  ¶¶ 94-96.)  The Marias have no separate assault claim, but assuming

9  *arguendo* that the FTCA claim which encompasses a claim for assault under Claim I which

10  pertains to all plaintiffs, is directed to an alleged assault on the Marias on July 7, 2005, this claim

11  will be addressed, albeit only briefly.  In their depositions, the Marias testified that they were not

12  personally pursuing a claim for assault.  (Def.'s Ex. 2 at 7:20-21; Ex. 3 at 5:23-24.)

13      In any event, out of an abundance of caution, even if the Marias could proceed with an

14  assault claim, summary judgment should be granted to defendant.  The facts pertaining to the

15  alleged assault were set forth in the previous section.  The Ninth Circuit has held that detaining

16  the occupant of a house and handcuffing the adult members of the family during a search was

17  reasonable in light of the government's interest in locating handguns at the residence of a

18  suspected drug trafficker, an inherently dangerous activity, which outweighed the risk of harm if

19  handcuffs were not used.  Avina v. United States, 681 F.3d 1127, 1131-32 (9th Cir. 2012).  The

20  court also found it reasonable for the agents conducting the search to forcefully push the adult

21  male occupant to the ground in the initial minutes of the search because he was refusing to follow

22  their commands.  Id. at 1132.  The court, however, refused to affirm a grant of summary

23  judgment in regard to the agents' handling of two minor girls, aged eleven and fourteen, during

24  the same search.  Whether the decision to force the girls to lie face down on the floor while

25  handcuffed behind their backs and guns drawn at their heads was reasonable was an issue of

26  material fact.  Id. at 1132-33.

27      Here, in contrast, the agents did not enter the house, but showed the occupants the

28  contempt order through the window.  Although their guns were drawn outside, plaintiffs were

18

inside a locked house, looking at the agents out the window.  Although plaintiffs were detained, Edward Maria felt free to leave with his daughter, and did so. The short detention of Edward in and search of his car trunk when he was leaving was clearly reasonable in that Lonnie Schmidt could have hid himself in the trunk to make an escape.  Donna Maria, who remained in the house, was free to move about inside the house or to leave the house as her husband had.  None of the plaintiffs were touched or handcuffed during the detention as the agents did not enter the house. It is true that the situation at the Maria house did not involve a suspected drug trafficker or guns hidden in the house, but the mere fact of guns drawn outside the house, hitting the door with a flashlight, and turning off the water supply to the house, if true, is well within the bounds of reasonableness, especially in light of Lonnie Schmidt's history of failure to appear at previous court proceedings and comply with the court's orders.

Assuming the Marias had a claim for assault that was not waived, the court finds no issue of material fact in this regard.  The agents were reasonable in their actions as a matter of law.

E. <u>Intentional Infliction of Emotional Distress</u>

None of the plaintiffs raised intentional infliction of emotional distress as a claim in their letters submitted to administratively exhaust their claims.  <u>See</u> ECF No. 44.  Failure to specifically reference this type of claim is fatal to the exhaustion requirement.  <u>See</u> <u>Totten v. Norton</u>, 421 F.Supp.2d 115, 123 (D.D.C. 2006) (presenting an EEO complaint about reprisal discrimination does not serve to exhaust claim of intentional infliction of emotional distress under the FTCA, even where EEO complaint made passing reference to "compensation for humiliation, cost and attorney fees"); <u>Folley v. Henderson</u>, 175 F.Supp.2d 1007, 1017 (S.D. Ohio 2001) (holding in the alternative that plaintiff failed to exhaust administrative remedies in regard to claim of intentional infliction of emotional distress, notwithstanding her filing of an EEO complaint for sex and race discrimination); <u>Fairley v. Potter</u>, 2003 WL 403361, at *6 (N.D. Cal. Feb.13, 2003) (plaintiff's EEO complaint about sexual discrimination was inadequate to exhaust tort claim of sexual battery or intentional infliction of emotional distress); <u>Selland v. United States</u>, 966 F.2d 346, 347 (8th Cir. 1992) (failure to present specific claim of intentional infliction of emotional distress to the federal agency caused court to lose jurisdiction of that claim under the

19

FTCA); <u>Cardozo v. Graham</u>, 848 F.Supp. 5, 9 (D. Mass. 1994) (plaintiff failed to exhaust administrative remedies despite letter to agency claiming that subsequent investigation "was devastating" to plaintiff because there was no mention of emotional distress suffered by plaintiff or that plaintiff intended to pursue claims for either intentional or negligent infliction of emotional distress, but letter mentioned only violation of 18 U.S.C. § 2510 and that legal and constitutional rights were violated).

Because plaintiffs did not present any administrative claim for intentional infliction of emotional distress to the United States government, judgment should be entered for the government on this claim.

F. <u>Abuse of Process</u>

The Manzers, the Marias, and Lonnie Schmidt properly exhausted claims for abuse of process. <u>See</u> ECF No. 44 at 31, 38, 49. It is difficult to conceive how this claim could relate to the law enforcement personnel in this case and indeed, the evidence demonstrates that the claim clearly does not. In their depositions, Donald Manzer, Edward Maria and Donna Maria testified that they were not seeking relief for abuse of process. (ECF. No. 98-1 at 155, 87, 123.) Deborah Manzer testified that she was seeking relief for this claim, however. (<u>Id.</u> at 179.) Defendant argues that according to deposition testimony of Lonnie Schmidt and Deborah Manzer, this claim is based on the alleged conduct of former defendants Warfield, Buchmeyer and/or the SEC and not on conduct of the U.S. Marshals (the only personnel on which the FTCA claim is based). The deposition testimony of Lonnie Schmidt confirms that his allegation of malicious intent in obtaining the order was directed at the receiver, not the U.S. Marshal. (Def.'s Ex. 1 at 45:15-46:1-18, 51:24-52:18.) Likewise, Deborah Manzer testified in this regard that she has been in litigation in various cases, all stemming from the action filed by the receiver, Warfield, which is the basis for her malicious prosecution claim. (Def.'s Ex. 5 at 9-15.) Deborah Manzer testified that the abuse of process claim was based on the aforementioned litigation against her as related through her testimony regarding the malicious prosecution claim, but that it concerned the way the property was handled and claims that she had been served when in fact she had not been served. When questioned on this point, she clarified that the abuse of process claim was based on

1  the litigation against her and how it was being conducted.  (Id. at 16.)  Therefore, the claim of

2  abuse of process does not concern the U.S. Marshal defendants.

3    In any event, as a matter of law the U.S. Marshals cannot be held accountable under this

4  legal theory.  "The elements of a cause of action for abuse of process are an ulterior motive in

5  using the process and the use of the process in a wrongful manner."  Susan S. v. Israels, 55

6  Cal.App.4th 1290, 1302, 67 Cal. Rptr.2d 42, 49 (1997), citing Abraham v. Lancaster Community

7  Hospital, 217 Cal.App.3d 796, 826, 266 Cal.Rptr. 360 (1990).

8

9    An abuse of process claim requires an ulterior purpose, as well as a "willful

10  act in the use of the process not proper in the regular conduct of the proceeding."
Templeton Feed and Grain v. Ralston Purina Co., 69 Cal.2d 461, 466, 72 Cal.Rptr.

11  344, 446 P.2d 152 (Cal.1968). There must be must be a definite act not authorized
by the process or used for a collateral advantage. Id. "[T]here is no liability where

12  defendant has done nothing more than carry out the process to its authorized
conclusion, even though with bad intentions." Id. The California Supreme Court

13  explained that abuse of process claims typically involve a form of extortion, and it
is that act-not the legal proceeding-that constitutes the claim. Id. Plaintiff has set

14  forth no facts to suggest an ulterior purpose, nor has he indicated that Defendants
did anything but "carry the process to its authorized conclusion." See also Vierria

15  v. California Highway Patrol, No. CIV S–09–0305 KJM GGH, 2011 WL
2971170, at * 10–11 (E.D.Cal. July 20, 2011) (plaintiff's abuse of process claim

16  failed because the complaint failed to set forth any fact supporting her contention
that there was an improper purpose in conducting a deposition).

17

18  Mong Kim Tran v. City of Garden Grove, 2011 WL 5554370, *6 (C.D. Cal. Nov. 14, 2011).

19

20    The tort of abuse of process is "interpreted broadly to encompass the entire range
of 'procedures' incident to litigation." Barquis v. Merchants Collection Assn., 7

21  Cal.3d 94, 104 fn. 4, 101 Cal.Rptr. 745, 496 P.2d 817 (1972). …"A showing of
malice, whether express or implied, is required." Slaughter v. Legal Process &

22  Courier Service, 162 Cal.App.3d 1236, 1247, 209 Cal.Rptr. 189 (Cal.App. 1
Dist.1984). "Abuse of process claims merely require malice, which 'may be

23  inferred from the wilful abuse of the process.' " Charles J. Vacanti, M.D., Inc. v.
State Comp. Ins. Fund, 24 Cal.4th 800, 825, 102 Cal.Rptr.2d 562, 14 P.3d 234

24  (2001) (citing Tranchina v. Arcinas, 78 Cal.App.2d 522, 526, 178 P.2d 65 (1947)).
The ulterior motive element can be inferred from proof of a willful improper act,

25  the critical question therefore is whether Plaintiff has established a "willful act in
the use of process not proper in the regular conduct of the proceedings." Drum v.

26  Bleau, Fox & Associates, 107 Cal.App.4th 1009, 1019, 132 Cal.Rptr.2d 602
(Cal.App. 2 Dist.2003).

27

28  Garcia v. City of Merced, 637 F.Supp.2d 731, 750 (E.D. Cal. 2008).

As in <u>Mong Kim Tran</u>, there are no facts whatsoever to indicate an ulterior purpose or a willful act not authorized by the process on the part of the U.S. Marshals in this case.  The facts are that the Marshals obtained a search warrant that they were not required to get, but did so out of an abundance of caution, in addition to the court order of contempt, and that they merely "carried the process to its authorized conclusion."  Unlike in <u>Garcia</u>, plaintiffs have shown no false testimony to support the warrant; there was no investigation by the Marshals, let alone one that was instigated in retaliation and with intimidation, coercion or defamation.  Nor did the process pursued by the Marshals result in a civil claim of misconduct by Officer Ashton. Therefore, the United States should be granted summary judgment in regard to any claim of abuse of process.

IV.  <u>Plaintiffs' Motion for Summary Judgment</u>

Plaintiffs spend much of their counter-motion arguing over claims and parties which have already been dismissed from this action.  The following arguments will not be discussed here because these issues have been previously resolved and these parties dismissed:  "the Texas Court lacked jurisdiction of the case;" "the receiver did not have jurisdiction to conduct search and seize property;" "the receivership order violated the Fourth Amendment by failing to describe with particularity the things to be seized and the places to be searched;" and "the receiver violated plaintiffs' Fourth Amendment rights, as well as due process of law, by exceeding the scope of authority given to him under the receivership order."  (ECF No. 109-1 at 2-3.)

To the extent that plaintiffs argue that their Fourth and Fifth Amendment rights, as well as their due process rights, were violated by the U.S. Marshals, plaintiffs are advised that an FTCA claim, the only claim remaining in this case, is limited to claims which are not constitutional in nature.[12]  The FTCA is the "exclusive" remedy for any civil action for money damages against an employee of the United States government who has acted in the scope of office or employment. 28 U.S.C. § 2679(b)(1).  The Act specifically provides that this exclusivity "does not extend or apply to a civil action against an employee of the Government ... which is brought for a violation

---

[12] <u>Bivens</u> claims have been previously dismissed.

1   of the Constitution of the United States." <u>Id.</u> § 2679(b)(2)(A).  Therefore, plaintiffs' claims of

2   constitutional violations are precluded and will not be addressed further.

3   <u>CONCLUSION</u>

4        Accordingly, IT IS ORDERED that:

5   1.  Defendant's request for judicial notice, filed April 25, 2013, (ECF No. 100) is granted.

6   2.  Plaintiffs' request for the undersigned to recuse himself from this action is denied.

7        For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

8        1.  Defendant's motion for summary judgment, filed April 25, 2013, (ECF No. 97), be

9   granted;

10       2.  Plaintiffs' counter-motion for summary judgment, filed June 6, 2013, (ECF No. 109),

11  be denied; and

12       3.  Judgment be entered for defendant.

13       These findings and recommendations are submitted to the United States District Judge

14  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen

15  (14) days after being served with these findings and recommendations, any party may file written

16  objections with the court and serve a copy on all parties.  Such a document should be captioned

17  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

18  shall be served and filed within seven (7) days after service of the objections.  The parties are

19  advised that failure to file objections within the specified time may waive the right to appeal the

20  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

21  DATED: October 1, 2013

22                     /s/ Gregory G. Hollows

23                    United States Magistrate Judge

24

25  GGH:076/Schmidt0660.msj

26

27

28